AUGUSTE SCHREIBER et al., respondents,

*v.*

NATHAN DROSNESS et al., appellants.

[Decided January 31st, 1927.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Fielder, who filed the following opinion:

"By deed dated August 29th, 1885, the Lake Hopatcong Land and Improvement Company acquired title to an unimproved tract of land on and adjacent to the shore of the lake. It thereupon filed a map of the tract in the Morris county clerk's office, showing the tract laid out in streets and blocks, the blocks being numbered and subdivided into lots. One of these blocks, numbered 9, is designated on the map as hotel property, and on that block the erection of a hotel was commenced in 1885 and completed in 1886, said block being conveyed to the Lake Hopatcong Hotel Company by deed dated January 28th, 1886. This hotel was known as 'The Breslin' and is now known as 'The Alamac.' Surrounding the hotel property was a section laid out in blocks and known as 'North Park,' in which section all lots were conveyed by the Lake Hopatcong Land and Improvement Company by deeds referring to the filed map and containing a covenant binding each grantee, his heirs and assigns substantially as follows:

"That they will not at any time hereafter erect, or suffer to be erected, upon the premises conveyed, or on any part thereof, any building to be used or occupied for any of the purposes herein and hereby prohibited, nor at any time use or employ, permit or suffer to be used, any building erected or which may hereafter be erected on said premises, or any part thereof, for use or purpose of various named uses [unnecessary here to name] or any hotel or inn, or any buildings whatever other than private dwellings with their necessary

boat houses and outbuildings, which covenant shall attach to and run with the land and shall be enforceable against the grantee, his heirs and grantees by the grantor or other grantees, and that it shall be lawful not only for the grantor, but also for the owner of any lot in the vicinity or adjoining the premises granted, deriving title through the grantor, to institute and prosecute proceedings at law or in equity against the persons violating the covenant, for an injunction and for specific execution thereof and for damages.

"The property conveyed to the hotel company contained an identical covenant, except that it did not include the restriction against a hotel or inn, or against buildings other than private dwellings. The scheme of the Lake Hopatcong Land and Improvement Company seems to have been to provide for the erection of a hotel and to establish North Park, near it, as a section devoted to residential purposes only.

"The complainants and defendants own property in the North Park section, all deriving their titles through deeds from Lake Hopatcong Land and Improvement Company containing the covenant first mentioned. Upon the respective properties owned by the parties, buildings were erected, designed and used for dwelling purposes only until the owner of one of the properties conveyed to Marmon Holding Company by deed dated June 21st, 1922. The summer of 1922 the Marmon Holding Company used the dwelling house on its property as a summer vacation home for its stockholders, their families and friends, and by deed dated October 16th, 1922, it conveyed to the defendants, Nathan Drosness and Louis Levy, who, in the summers of 1923, 1924 and 1925, ran the place under the name of Passaic Country Club for the accommodation of boarders. They enlarged the dwelling house, claiming to have expended $20,000 for improvements and extensions, and they put up *partitions* in the gardener's cottage and boat house, using both of those buildings as sleeping quarters for guests. The complainants allege that the use to which the defendants have put their property violates the restrictions, and they complain that the number of

persons who occupy the enlarged dwelling house, the gardener's cottage and boat house and swarm over the complainants' lands; the loud noises of shouting, singing, instrumental music and dancing all day and into the late hours of the night and early morning, especially Saturdays, Sundays and holidays, and the parking of many automobiles on and in front of complainants' properties, constitute a nuisance, and they pray that the defendants, Drosness, Levy and Passaic Country Club, be restrained from using their property as a boarding house, hotel or inn.

"That the defendants are operating a boarding house, hotel or inn under the guise of a club is apparent. No effort was made to prove that the persons enjoying the accommodations offered by the defendants are members of a club, and I do not think it would affect the situation if they were. The testimony for the complainants is that during the summer of 1925 from one hundred to one hundred and fifty persons at a time, and especially on Saturdays, Sundays and holidays, occupied the defendants' buildings, while defendants admit to accommodating sixty to seventy-five persons at a time. The defendants say they furnish board and lodging to their patrons for a profit, but admit no transients or persons not properly introduced. The evidence shows that the defendants have not restricted the use of their place to acquaintances 'club members' or regular boarders, for they advertise its accommodations and attractions in newspapers whereby they announce particularly that rooms can be had by 'weekenders,' thus inviting the public to use their house as a boarding house for a few days or for a longer period. There can be no doubt but that the defendants are using their property for other than private dwelling purposes and that such use is a clear violation of the restrictions thereon, and that the complainants suffer from and are injured by such violation, and are therefore entitled to have such violation restrained. *Sanford* v. *Keer, 80 N. J. Eq. 240; Dettsloff* v. *Hockstetter, 96 N. J. Eq. 391.*

"The defendants contend that the restrictions should not be enforced against them for the following reasons:

"(a) They do not apply alike to all property in the neighborhood, in that the property occupied by The Alamac Hotel is not restricted against business uses or against a hotel or inn.

"It is not necessary to the efficacy of the restrictions imposed on the lots in the North Park section that the same restrictions be applied to all property owned by the original grantor shown on its filed map. Restrictions for various sections of the tract may vary in accordance with the design of the original grantor for the character of each section. The promoter of a land-selling scheme may allot one section of his tract for stores, another for a railroad station, another for a hotel and another for private residences, and it is sufficient if the restrictions for each section are uniform according to the use for which the promoter has designed such section. *Sanford* v. *Keer, supra.*

"The property to be devoted to hotel use was conveyed to a hotel company by deed recorded more than a year prior to the date of the conveyance from the Lake Hopatcong Land and Improvement Company to the person through whom the defendants claim title, and it was designated and plainly delineated on the map filed by the common grantor before it sold lots on the tract as hotel property. Each deed made by the common grantor refers to said map, so that the grantee to whom the common grantor conveyed, and through whom defendants claim title, had notice when he accepted a deed containing the restrictions, that a portion of the property shown on the map was to be devoted to hotel purposes. Moreover, the hotel building was actually on the land when the defendants' predecessor in title accepted his deed from the Lake Hopatcong Land and Improvement Company.

"(b) The Lake Hopatcong Land and Improvement Company conveyed a portion of its tract without any restrictions.

"This has reference to a deed dated September 13th, 1888, made by the Lake Hopatcong Land and Improvement Company to Breslin Hotel and Land Company, conveying all the grantor's property, real, personal and mixed, wheresoever situated, which deed contains no restrictions. No descrip-

tion of the land intended to be conveyed is given in this deed, and there is no evidence to show that it conveyed any lot in the North Park section, or, indeed, any property shown on the filed map heretofore referred to. Neither is there any evidence that on any property conveyed by this deed is there a structure intended or used for a purpose in conflict with the restrictions under consideration. The deeds from the Lake Hopatcong Land and Improvement Company under which the complainants claim are dated 1885 and 1886 and the deeds under which the defendants claim are dated 1887, so that the restrictions upon the properties owned by all the parties to this suit and the rights and liabilities arising therefrom, were in effect as a neighborhood scheme prior to the deed to the Breslin Hotel and Land Company. By conveying [if it did] adjoining land without similar restrictions, the common grantor could not affect the rights of their grantees [or the rights of those claiming under them] acquired by its prior deeds containing the restrictive covenant, which covenant expressly gave the grantees the right to enforce restrictions against other grantees of the common grantor. *Bridgewater* v. *Ocean City, &c., 62 N. J. Eq. 276; affirmed, 63 N. J. Eq. 798; Shoyer* v. *Mermelstein, 93 N. J. Eq. 57.* Such evidence as the defendants presented to show stores, a public dock and an amusement park, related to property outside and a considerable distance away from the North Park section. The evidence does not show that such business or amusement places are maintained contrary to a restrictive covenant affecting the section in which they are located, and, if they are, they are so far distant from the North Park section as to be of little concern to the complainants, and, therefore, laches, acquiescence or abandonment on the part of the complainants cannot be urged. *Dettsloff* v. *Hockstetter, supra.*

"(c) The locality known as Lake Hopatcong has, since 1885, grown from a sparsely-settled community to a popular summer resort, and is now visited by a large number of people who require hotel and boarding house accommodations for summer vacations; therefore, the restrictions against the use

of defendants' property for hotel, inn and business purposes are obsolete and should not now be enforced by this court.

"This is an argument that the complainants' property rights are too minute to be protected as against that portion of the public who might desire to patronize a boarding house, hotel or inn on the defendants' lot, and that if the complainants are injured by a violation of the restrictions, they should be left to pursue their remedy at law for damages. But damages afford inadequate relief. The complainants are not required to surrender their property rights for the benefit of strangers to the restrictive covenant, but they are entitled to the specific enforcement of the covenant so that they may enjoy their properties in the manner secured to them thereby. *Bridgewater* v. *Ocean City, &c., supra; Sandusky* v. *Allsopp,* 99 N. J. Eq. 61.

"(d) Finally, the first violation of the covenant occurred in 1922, but the complainants stood by and allowed the defendants to expend much money on the property, which the defendants will lose if the restrictions are enforced.

"The Marmon Holding Company used the dwelling house during the summer of 1922, and the first use of the house by the defendants was the summer of 1923. That summer and the summer of 1924, its use was confined to a small number of boarders, but for the summer of 1925 the defendants enlarged the house, and it was not until the latter summer that their patrons came in such numbers that it became apparent that their place was being operated as a business enterprise for the accommodation of the public, and the complainants filed their bill January 21st, 1926.

"The defendants were notified personally in 1923 that the property was restricted against business uses and to expend money thereon at their peril. Their deed contains a reference to the restrictions, and an examination of the records would disclose what those restrictions are and that the defendants could see that all houses in the North Park section are private dwelling houses, should have put them on inquiry. They, therefore, had notice of the complainants' rights, and having such notice they cannot complain that the

complainants did not make earlier objection to the use they were making of their property. *Bridgewater* v. *Ocean City, &c., supra.*

"It being my opinion that the complainants are entitled to the relief they seek, on the ground that the defendants are violating the restrictions on their property, it is unnecessary to refer to the other reason urged by the complainants for the same relief, namely, that the defendants' use of their property constitutes a nuisance, except to say that I do not think the evidence adduced will warrant a restraint for the latter reason."

*Messrs. King & Vogt,* for the respondents.

*Mr. Albert H. Holland,* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Fielder.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ.  12.

*For reversal*—None.