## Ludwig C. Ewertsen et al.

### v.

## Erich Gerstenberg et al.

*Opinion filed June 21, 1900—Rehearing denied October 4, 1900.*

1. REAL PROPERTY—*what does not relieve property from building restrictions.* That the immediate deed and some others in the chain of title. to certain lots do not expressly refer to building restrictions contained in the original plat, recognized by all lot owners, including the grantee, as a common source of title, does not, of itself, relieve such lots from the binding force of such restrictions.

2. SAME—*when equity will not enforce building restriction by injunction.* Equity will not enforce a building restriction by injunction but will leave complainant to his remedy at law, where, by the acts of the party imposing such restriction, or those claiming under him, the property, and that in the neighborhood, has so changed in its character as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant relief would be a great hardship on the defendant and of no benefit to complainant, or where the complainant has waived or abandoned the restriction.

3. SAME—*doubts should be resolved in favor of free use of property.* In construing deeds and instruments containing restrictions and prohibitions as to the use of the property conveyed, all doubts should be resolved in favor of the free use thereof for lawful purposes, in the hands of the owner of the fee.

APPEAL from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

HAMLINE, SCOTT & LORD, and GEORGE W. HESS, for appellants.

FRANCIS LACKNER, OTTO C. BUTZ, AMOS C. MILLER, and MAJOR McGREGOR, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Upon the final hearing of the issues made upon the bill filed by the appellees, the superior court entered a decree in substance as follows: That the defendant Ludwig C. Ewertsen is the owner of lots 1 and 2 in block 1,

in Jerome I. Case's subdivision of the north 418 feet of
out-lot "F" in Wrightwood, being a subdivision of the
south-west quarter of section 28, township 40, north,
range 14, east of the third principal meridian, in the city
of Chicago, county of Cook and State of Illinois; that
complainants are the owners in fee simple of lots 29 and
30 in said block 1, which are unimproved by buildings of
any description; that the remaining defendants are in-
terested in the subject matter of this suit substantially
as set forth in the bill of complaint; that defendant Lud-
wig C. Ewertsen was, at the time of the commencement
of this suit, about to begin the erection of, and since
the commencement of this suit has begun and partially
erected, a building upon said lots 1 and 2; that a part of
said building has been erected upon the east 18.9 feet of
said lot 1; that complainants are entitled to an easement
for air, light and prospect in said east 18.9 feet of said
lot 1, which easement requires that the east 18.9 feet be
reserved and appropriated for a court-yard and shall not
be built upon. It is therefore ordered that defendant
Ludwig C. Ewertsen and other defendants be restrained
from proceeding with the erection of that portion of the
said building which rests upon said east 18.9 feet of said
lot 1. It is further ordered that Ludwig C. Ewertsen
remove all that part of the said building now resting on
said east 18.9 feet of said lot 1, and that the said defend-
ant Ludwig C. Ewertsen and all other defendants be per-
petually enjoined from building upon said east 18.9 feet
of said lot 1.

The subdivision "Wrightwood" was made in the year
1860, and the map or plat thereof was recorded in the
recorder's office of Cook county on November 26 of that
year. Said out-lot "F" was a part of said subdivision
and contained 17.27 acres. On the plat of said out-lot
and others contained in the said subdivision lines were
drawn 30 feet inside of and parallel with the boundary
lines of such out-lots. The certificate of the owners to

said plat of said lands stated that "said parties certify that they have mapped and platted the same, as on the above map represented, into out-lots, blocks and lots, with avenues, streets and courts as above shown, and that all the deeds or other conveyances of any part of said lands and premises heretofore made and hereafter to be made by them or either of them, referring to any map or plat of the premises above platted, or any part thereof, had and shall have reference to the above plat or map and to future subdivisions of the same. All the spaces between the front lines of the lots and blocks and the blue lines drawn, respectively, 30 and 50 feet back from the margins of the streets, avenues and courts are reserved and appropriated solely for court-yards, and are not to be built upon." Afterwards, in the same year, the owners of said Wrightwood addition made a partition deed, by which deed Timothy Wright, one of the part owners, became the sole owner in fee simple of said out-lot "F." Reference was made to said map or plat of Wrightwood in said deed, and it was declared to be subject to the provisions of said plat, and to the certificates thereto, regulating courts and court-yards and the use thereof.

In 1891 Jerome I. Case, then being the owner of the north 418 feet of said out-lot "F," made a subdivision of the same into lots, blocks, streets and alleys, and made and recorded a plat thereof, with a line drawn thereon marked "building line," 30 feet within and from the outside or street lines of such lots, in the same manner and at the same places as indicated upon the plat of said out-lot "F'" as shown in the original addition. The following plat shows most of the east half of block 1 of said Case's subdivision, the building line, the location of buildings on certain lots, and the building of Ewertsen, the construction of which was enjoined by the decree. It also shows the encroachments which have been made upon the building line, and upon the space between such line and the

street which had been set apart for a court-yard, on the
west side of Orchard street and a part of Wrightwood
avenue:

The defendant Ewertsen, the owner of lots 1 and 2,
and the complainants, the owners of lots 29 and 30, as
well as other owners of lots in said block 1, derived their

titles by *mesne* conveyances from Jerome I. Case, who
derived his title by *mesne* conveyances from Timothy
Wright. The deeds in the chain of title to complainants'
said lots provided, in substance, "that a space of 30 feet
in depth along the east line of said lots 29 and 30, and
fronting on Orchard street, shall never be built upon or
in any manner obstructed or encumbered by buildings of
any description, but shall be forever left and reserved an
open area or space, in accordance with the lines shown
upon a plat of the subdivision," etc., (referring to said
original plat.) Some of the deeds to the other lots, from
23 to 34, inclusive, contained similar provisions, but no
such provision, nor any reference to any building line,
was contained in any deed in the chain of Ewertsen's title
to lots 1 and 2, except the provisions in said partition
deed and in said plats and their certificates, and except
what may be properly implied from references in other
deeds made to the plats; and the first contention of ap-
pellants is, that said restriction as to the building line
and the open space between that line and the street does
not apply to said lots 1 and 2, and that Ewertsen had
the lawful right to build to the street line:

The building Ewertsen began to construct was to be
an apartment building, three stories high, of brick and
stone, fronting on Orchard street, 4 feet from the street
line and extending back upon the rear ends of said lots
1 and 2. As shown by the above plat, it extended over
the building line 26 feet. If it were put back to the
building line, or even to a line 18.9 feet from the street,
as decreed by the court below, there would not be suffi-
cient depth to the two lots east and west for the building
as planned. That fact would be immaterial, however,
if the alleged restriction is binding upon Ewertsen as
the owner of said lots or constitutes an easement in said
lots in favor of the other lot owners. But was any such
restriction in the use of said lots 1 and 2 imposed or
created by said plats and partition deed, and reference

thereto in the deeds in Ewertsen's chain of title, as alleged by the complainants? We are of the opinion that there was. As said, however, in *Hutchinson* v. *Ulrich*, 145 Ill. 336: "Where real property is conveyed in fee, restrictions in the use are not favored; but where the intention of the parties is clear in the creation of restrictions and limitations upon the use of a grantee, courts will enforce the same." And we there further said: "All doubts must be resolved in favor of natural rights and against restrictions thereon. * * * In the construction of deeds containing restrictions and prohibitions as to the use of property by a grantee, all doubts should, as a general rule, be resolved in favor of a free use of property and against restrictions."

It is not necessary to consider the point made by the appellant, that the original plat, having been acknowledged by an attorney in fact and not by the owners, could not, under the law as it then was, create any legal restrictions upon the use of the property, for we are satisfied, from the evidence, that this plat was referred to and made a part of the partition deed and subsequent conveyances, and has been constantly recognized by all the lot owners as a common source of title, and that Ewertsen had notice of it and of said restrictions, and is now bound by them unless these restrictions have ceased to exist or are no longer enforceable against him or his said lots, in equity, for reasons hereinafter stated. His property was not relieved from their binding force merely because they were not expressly reserved in the conveyance to him, or in others of the deeds in his chain of title. *Smith* v. *Young*, 160 Ill. 163; *Marsh* v. *Village of Fairbury*, 163 id. 401; *Smith* v. *Heath*, 102 id. 130; 5 Am. & Eng. Ency. of Law, (2d ed.) 10.

Equity will not, as a rule, enforce a restriction, where, by the acts of the grantor who imposed it or of those who derived title under him, the property, and that in the vicinage, has so changed in its character and envi-

ronment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant the relief would be a great hardship on the owner and of no benefit to the complainant, or where the complainant has waived or abandoned the restriction,—or, in short, it may be said that where, from all of the evidence, it appears that it would be against equity to enforce the restriction by injunction relief will be denied, and the party seeking its enforcement will be left to whatever remedy he may have at law. (*Star Brewery Co.* v. *Primas,* 163 Ill. 652; *Coughlin* v. *Barker,* 46 Mo. App. 54; *Duke of Bedford* v. *British Museum,* 2 M. & K. 552; *Sayers* v. *Collyer,* 24 Ch. Div. 180; *Page* v. *Murray,* 46 N. J. Eq. 325; *Jackson* v. *Stevenson,* 156 Mass. 496; *Bangs* v. *Potter,* 135 id. 245; High on Injunctions, sec. 1158; *Trustees of Columbia College* v. *Thatcher,* 87 N. Y. 311.) These several grounds for denying equitable relief, applicable to the case at bar, will be considered without reference to the separate heads under which counsel have classified them.

It is apparent, as claimed by counsel for appellant, that the restrictions as to building were imposed and the spaces for court-yards were reserved in order that the property might be better adapted and made more desirable for residence purposes. We cannot suppose that the owners would plat lands with a view to their use for business purposes and impose restrictions of such a character as to make them practically unfit for such purposes; and while the lot owners, by observing such restrictions, might maintain them and the general residence character of the property, still, if they did not do so, but yielded to the advancing pressure of trade and violated and disregarded the restrictions and built upon the reserved court-yards, it is plain to be seen that such restrictions might in the lapse of time not only cease to be of any value whatever, but become a mere hindrance to the proper use of the property and an annoyance to the lot

owner.    It is not intended, of course, to be said that the use of the property in question in this case has changed to the extent mentioned, but the facts as agreed upon show that much of the property in the vicinity of the lots here in question is now used for business purposes,—that is, for stores and buildings of that character.

It is clear from the agreed facts that the restrictions as to building with reference to the building line established by the original plat, and as to building upon the space reserved for court-yards, have not generally been regarded by the lot owners.    It is agreed that the lots fronting on the south side of Wrightwood avenue from Orchard street to the next street west, all of which were subject to the same restrictions as those fronting on Orchard street, have been improved by the erection thereon of business buildings which extend to the street line and over and upon the whole of the 30 feet reserved for court-yards.    Ewertsen's lot 1 is on the corner of Wrightwood avenue and Orchard street, and fronts north on said avenue, and his lot 2 is next west of lot 1.    Upon lot 1 and the west part of lot 2, fronting on Wrightwood avenue, business buildings have been erected (as many others have been on that street) extending substantially to the street line, leaving about 25 feet of the front of the corner lot unoccupied, and it is upon the rear of these lots, extending south along Orchard street, that Ewertsen was proceeding to erect his apartment building, fronting east on Orchard street, when restrained by injunction in this case.    It is apparent that not only as to Wrightwood avenue on its south side, but as to many other of the streets of this addition, which need not be referred to further, the character and uses of the property had in some instances completely and in others partly changed from residence to business property, and by common consent or acquiescence of the lot owners the reserved court-yards had been abandoned and the space reserved for them appropriated to the same uses as the rest of the

property. A two-story building used as a store had been erected on the north-west corner of Wrightwood avenue and Orchard street, only 18 feet north of the north line of the avenue, and a public school building belonging to the city had been erected on the north-east corner, extending to the Orchard street line. On the opposite side of Orchard street from Ewertsen's proposed apartment building but 25 feet southward towards complainants' lots 29 and 30, (but being on the east side of the street,) there had been erected a large three-story apartment building with stone front, only three feet from the east line of Orchard street. It is also agreed that the eight lots immediately, in consecutive order, south of the complainants' lots, and fronting the same way on Orchard street, have been improved with large two and three-story residences, the fronts of which extend over said building line and upon said space reserved for court-yards from 7 to upwards of 11 feet, besides the space occupied by porches, stoops and steps. The plat above shows the extent of these encroachments. Orchard street has not, as yet, except as above stated and except as to certain corners, been devoted to business uses. The evidence shows that one of the complainants, owning said vacant lots 29 and 30, has lived only a block and a half from that part of Orchard street for ten years prior to the trial below, during which time the public school building, the apartment building and the other buildings on that street which had been constructed over said building line and upon the space reserved for court-yards have been erected, and that he never took any steps to prevent the obstruction of such court-yards or to preserve the easement which he now asserts he has in such spaces, as owner of lots 29 and 30.

While the facts show that there are many buildings having their fronts 30 feet back from the street line, we find no evidence, either in the testimony or in the agreed facts, of any uniform observance by the property owners,

or of any number of them, of the alleged building line, or of any other, or of the right of the lot owners to keep unobstructed the said spaces so reserved for court-yards, but there was evidence to the contrary. Under these circumstances, ought a court of equity to enjoin Ewertsen from encroaching with his building upon said space when all others who have constructed buildings on that side of the block have done so, though to a less extent, perhaps, than he seeks to do, and without any attempted hindrance on the part of the complainants? We are of the opinion that it would be inequitable to grant such relief. To construct this building fronting on Orchard street would no more injuriously impair the alleged easement than to construct a store building on the corner of the same lot fronting on Wrightwood avenue, which on that side is already appropriated to such business purposes and the easement there wholly abandoned. Other corners of Orchard street with cross-streets have been built upon and devoted to business uses, and it seems clear that the character of the property at such corners has changed from that of residence to that of business property, and such lots have to a large extent been actually appropriated to business purposes. While the action of the property owners on Wrightwood avenue alone would not bind the property owners on Orchard street so as to deprive them of the beneficial use of the court-yards upon their street had they been there preserved, such action is important as showing a general change in the character and uses of the property in the vicinity subject to the same restrictions, and, in connection with the disregard thereof by the property owners on Orchard street, as showing an abandonment of such restrictions. It certainly cannot be contended that all other lot owners could disregard the restrictions and invade and build upon said open space to the extent that suited their own interests, convenience or pleasure, and thus destroy the beneficial interest of the appellant there-

186—23

in, and still retain the equitable right to enforce such restrictions against him.

If it be said that the property owners on Orchard street who have disregarded the building line and appropriated to their own unrestricted use so much of the space so set apart for a court-yard as they desired by building thereon have not joined in the bill and that the complainants' lots are vacant and unoccupied, still it is shown that one of the complainants resided in the immediate neighborhood, and that they were the owners of the lots in question while these encroachments were being made; that they are chargeable with knowledge of them, and took no steps to preserve from destruction by others the restrictions they now seek to enforce against the appellant. We think the complainants should be held to have acquiesced in what has been done, and to occupy no better position now than other lot owners. The building on lot 28, next south of complainants' property, extended 9 feet over the building line and left but 21 feet of said open space unobstructed. Other buildings, in consecutive order, adjoining on the south, encroached still more, one leaving but 18.9 feet of said space unobstructed by its walls. Complainants acquiesced in these encroachments, notwithstanding the buildings were nearer to their said lots than appellant's building will be when constructed.

The court below clearly recognized the inequity of compelling the appellant to reserve the full 30 feet in front of his said building when other lot owners had appropriated to their own use, some one-third and others the whole of such space in front of their premises by building upon it, destroying altogether its uniformity and to a great extent its value, and decreed that appellant should reserve 18.9 feet of said space unobstructed, for such court-yard. The only basis for fixing this precise limit was, that, disregarding porches which had been built on this space to houses on the west side of Orchard

street, the nearest approach of any house to the street was 18.9 feet, and it is argued that that much of the court-yard remained unobstructed and unaffected. We do not regard the evidence as being sufficient to authorize the court to establish such a new restriction or limitation. There was no uniform limitation adopted or acquiesced in when the one originally prescribed had been abandoned. We do not mean to say that an easement abandoned in part will be held as abandoned altogether, for where it is abandoned *pro tanto* only, and a material and beneficial part remains, it will be protected. But while such restrictions are sometimes treated as easements, it is apparent that the value of a restriction of this character depends very largely on the uniformity of its observance in the improvement of property affected by it. In the case at bar it cannot be said there has been any uniform observance of the restriction in the vicinity of the property in question affected by the restriction, and we are of the opinion that the value of the easement —treating it as such—for all practical purposes has been destroyed. As to the property of appellant the restriction would seem to have become of no value whatever, and it would be a great hardship to enforce it against him when all corresponding benefit has been taken away from him by the action of others, when to so enforce it would destroy the beneficial use of his property and confer no substantial benefit on other property owners or the complainants. In other words, we are of the opinion that the restrictions against building, so far as they affect this part of Orchard street, have by the general consent and acts of the property owners, acquiesced in by the complainants, been so far disregarded and abandoned, and the reserved space so far appropriated to other uses, as to make it inequitable to enforce them against appellant in the use of his said lots. The most that can be claimed for complainants is that their right to enforce the restrictions in equity is doubtful; but, as we have

seen, all such doubts should be resolved against restrictions of the free use, for lawful purposes, of property in the hands of the owner in fee.

The decree will be reversed and the cause remanded, with directions to dismiss the bill.

*Reversed and remanded.*