### CORRIGAN et al. v. BUCKLEY.

(Court of Appeals of District of Columbia. Submitted April 21, 1924. Decided June 2, 1924.)

No. 4059.

1. Covenants ⊜1—Property owners may enter into binding covenant running with land, prohibiting sale to or occupancy by negroes.

Property owners may enter into covenant running with the land, binding themselves, their heirs and assigns, during a period of 21 years, not to permit land to be sold, leased, or occupied by negroes, and such a covenant is enforceable, not only against negroes, but between parties to the agreement.

2. Constitutional law ⊜215—Negro's constitutional right to acquire property does not include power to compel sale to him.

The constitutional right of a negro to acquire, own, or occupy property does not carry with it constitutional power to compel sale or conveyance to him of any particular private property.

3. Constitutional law ⊜209—Equal protection laws inhibition on power of state.

The equal protection clause of the Fourteenth Amendment is an inhibition on the power of the state, and not on action by individuals in respect of their property.

4. Constitutional law ⊜215—Segregation of races not against public policy.

Where method adopted does not amount to denial of fundamental constitutional rights, segregation of races, whether by statute or private agreement, is not against public policy.

5. Covenants ⊜1—Statutes held not to protect against covenant.

Statutes enacted to carry into effect provisions of Constitution afford no more protection than Constitution against covenant against sale of property to, or occupancy by, negroes.

Appeal from the Supreme Court of the District of Columbia.

Suit by John J. Buckley against Irene Hand Corrigan and another. Decree for complainant, and defendants appeal. Affirmed.

James A. Cobb, of Washington, D. C., for appellants.

James S. Easby-Smith, of Washington, D. C., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and BARBER, Judge of the United States Court of Customs Appeals.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

VAN ORSDEL, Associate Justice.   Appellee, plaintiff below, filed a bill of complaint to restrain defendant Corrigan from conveying to defendant Curtis certain real estate in the District of Columbia, and to prevent the latter from occupying the same, in violation of a covenant affecting the title to said land, and to compel specific performance of the covenant.

It is alleged in the bill that plaintiff owns an undivided interest in lot 74, square 152, improved by a dwelling house.   Defendant Corrigan is the owner of lot 20, square 152, on which is situated a dwelling house; that on June 1, 1921, plaintiff and defendant Corrigan, together with 28 other persons, who were owners of land improved by dwelling houses adjacent to and in the same immediate neighborhood as the above property described, mutually executed and delivered a covenant which was recorded in the office of the recorder of deeds of the District of Columbia, which, after describing the location of the property as a whole, and expressing the desire of the parties to further the interests of said community and neighborhood, provided that:

"In consideration of the premises and the sum of five dollars ($5.00) each to the other in hand paid, the parties hereto do hereby mutually covenant, promise, and agree each to the other, and for their respective heirs and assigns, that no part of the land now owned by the parties hereto, a more detailed description of said property, being given after the respective signatures hereto, shall ever be used or occupied by, or sold, conveyed, leased, rented, or given to, negroes, or any person or persons of the negro race or blood. This covenant shall run with the land and, bind the respective heirs and assigns of the parties hereto for the period of twenty-one (21) years from and after the date of these presents."

Plaintiff alleged that thereafter defendant Corrigan entered into a contract with defendant Curtis to sell to the latter a house and lot belonging to the former and included within the covenant; that defendant Curtis is a person of the negro race and blood, and before making the contract had knowledge of the existence and terms of the covenant; and that in executing the contract of sale plaintiff had acted in violation of the terms and conditions of the covenant.   Plaintiff alleges that, if the conveyance is made in accordance with the contract of sale, irreparable injury will be done to plaintiff and to other persons who are parties to the indenture or covenant; that plaintiff is without any plain, adequate, and complete remedy at law; and that plaintiff is entitled to specific performance of the covenant by means of injunction preventing the defendant from carrying into effect the contract of sale.

Plaintiff accordingly prayed that defendant Corrigan be enjoined for 21 years from the date of the covenant, from carrying out the contract of sale with defendant Curtis, and that Curtis be permanently enjoined, during the same period of time, from taking title to the land, and from occupying, selling, conveying, leasing, renting, or giving the same to a negro, or permitting the same to be used or occupied by any negro.

Defendant Curtis filed a motion to dismiss the bill, on the ground that the covenant is void, in that it deprives defendant and others of property without due process of law, abridges the privileges and immunities of citizens of the United States, and denies the defendants

equal protection of law. The court below denied the motion to dismiss the petition, and, defendants electing to stand upon their motion, a decree of injunction was entered, from which this appeal was taken.

[1] Appellant seems to have misconceived the real question here involved. We are not dealing with the validity of a statute, or municipal law, or ordinance; nor are we concerned with the right of a negro to acquire, own, and use property; nor are we confronted with any pre-existing rights which are affected by the covenant here in question. The sole issue is the power of a number of landowners to execute and record a covenant running with the land, by which they bind themselves, their heirs and assigns, during a period of 21 years, to prevent any of the land described in the covenant from being sold, leased to, or occupied by negroes.

[2] The constitutional right of a negro · to acquire, own, and occupy property does not carry with it the constitutional power to compel sale and conveyance to him of any particular private property. The individual citizen, whether he be black or white, may refuse to sell or lease his property to any particular individual or class of individuals. The state alone possesses the power to compel a sale or taking of private property, and that only for public use. The power of these property owners to exclude one class of citizens implies the power of the other class to exercise the same prerogative over property which they may own. What is denied one class may be· denied the other. There is, therefore, no discrimination within the civil rights clauses of the Constitution. Such a covenant is enforceable, not only against a member of the excluded race, but between the parties to the agreement.

Our attention has not been called to any decision of the Supreme Court of the United States involving the exact question before us. It has, however, been before the courts of the states, where it has been held that similar covenants against ownership or occupancy by negroes are neither unconstitutional nor contrary to public policy. Parmalee et al. v. Morris, 218 Mich. 625, 188 N. W. 330; Queensboro Land Co. v. Cazeaux, 136 La. 724, 67 South. 641, L. R. A. 1916B, 1201, Ann. Cas. 1916D, 1248; Los Angeles Investment Co. v. Gary, 181 Cal. 680, 186 Pac. 596, 9 A. L. R. 115; Koehler v. Rowland, 275 Mo. 573, 205 S. W. 217, 9 A. L. R. 107.

[3] It is unnecessary to consider the contention that the restriction amounts to a denial of equal protection of the laws under the Fourteenth Amendment, since the Supreme Court has held in numerous instances that the inhibition is upon the power of the state, and not to action by individuals in respect of their property. United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667; United States v. Harris, 106 U. S. 629, 1 Sup. Ct. 601, 27 L. Ed. 290; Civil Rights Cases, 109 U. S. 31, 3 Sup. Ct. 18, 27 L. Ed. 835.

In Plessy v. Ferguson, 163 U. S. 537, 16 Sup. Ct. 1138, 41 L. Ed. 256, the court, sustaining the validity of a statute of Louisiana, providing for separation of races in passenger cars, as not being repugnant to the provisions of the Fourteenth Amendment, said:

"The object of the amendment was undoubtedly to enforce the absolute equality of the two races before the law but in the nature of things it could not have been intended to abolish distinctions based upon color, or to enforce social, as distinguished from political, equality, or a commingling of the two races upon terms unsatisfactory to either. Laws permitting, and even requiring, their separation in places where they are liable to be brought into contact, do not necessarily imply the inferiority of either race to the other, and have been generally, if not universally, recognized as within the competency of the state Legislatures in the exercise of their police power."

The foregoing rule applies, not only to segregation in railway coaches, but to statutes requiring separate white and colored schools, as well as regulations providing for the segregation of the races in municipal playgrounds, municipal golf courses, municipal tennis courts, and municipal bathing beaches. The same general and settled public opinion controls in respect of the segregation of the races in churches, hotels, restaurants, lodging houses, apartment houses, theaters, and places of public amusement.

[4] It follows that the segregation of the races, whether by statute or private agreement, where the method adopted does not amount to the denial of fundamental constitutional rights, cannot be held to be against public policy. Nor can the social equality of the races be attained, either by legislation or by the forcible assertion of assumed rights. As was said in People v. Gallagher, 93 N. Y. 438, 448 (45 Am. Rep. 232):

"This end can neither be accomplished nor promoted by laws which conflict with the general sentiment of the community upon whom they are designed to operate. When the government, therefore, has secured to each of its citizens equal rights before the law and equal opportunities for improvement and progress, it has accomplished the end for which it is organized, and performed all of the functions respecting social advantages with which it is endowed."

[5] Defendant claims protection under certain legislation of Congress. As suggested in the opinion of the learned trial justice, this legislation was enacted to carry into effect the provisions of the Constitution. The statutes, therefore, can afford no more protection than the Constitution itself. If, therefore, there is no infringement of defendant's rights under the Constitution, there can be none under the statutes.

The decree is affirmed, with costs.

Appeal to Supreme Court of the United States granted June 7, 1924.