(No. 19762.—)

FRANK CUNEO *et al.* Appellants, *vs.* THE CHICAGO TITLE AND TRUST COMPANY *et al.*—(JAMES MALTMAN *et al.* Appellees.)

*Opinion filed December 20, 1929—Rehearing denied Feb. 8, 1930.*

COBURN, KEARNEY & COBURN, and MILLER, GORHAM & WALES, (MARSHALL V. KEARNEY, of counsel,) for appellants.

DENT, DOBYNS & FREEMAN, LEESMAN, ROEMER & SCHNELL, WARREN PEASE, and GANN, SECORD & STEAD, (CHARLES Y. FREEMAN, ELMER M. LEESMAN, and HOWARD A. WILL, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellants filed a bill in the circuit court of Cook county seeking to remove certain building restrictions from their property in what is known as Castlewood subdivision. The bill made parties defendant the other owners of property affected by these restrictions in this subdivision. A number of them answered and some were defaulted. Appellants Warren Wright and William M. Wright, owners of property so affected, answered the bill, consenting to the entry of the decree, and filed a cross-bill seeking to have their property freed from these restrictions. The cause was referred to a master in chancery, who heard the evidence and reported with recommendation that the prayer of the bill and cross-bill be granted. The chancellor sus-

tained exceptions to the master's report and dismissed the bill and cross-bill. The cause is here for review.

These restrictions having created a perpetual easement a freehold is involved.

Castlewood subdivision consists of two blocks with a total of eighty-seven lots, extending east from Sheridan road, in the city of Chicago, to Lake Michigan, a distance of approximately 1100 feet. The subdivision is bounded on the west by Sheridan road, a through street; on the north by Ainslie street, extending west from Lake Michigan to and beyond Sheridan road; on the east by Lake Michigan, and on the south by LaFayette parkway, extending from Sheridan road east to Lake Michigan. Castlewood Terrace, on which the property in question here is located, extends through the middle of this subdivision from Sheridan road east to the lake. There are no north and south streets intersecting this subdivision. The lots of this subdivision are 50 feet in width. Twenty-one of them face the north boundary of Castlewood Terrace. Twenty-two face Castlewood Terrace on its south boundary. Facing Ainslie street are twenty-one lots, and twenty-three face LaFayette parkway. The lots of the subdivision facing Ainslie street and LaFayette parkway abut the lots facing on Castlewood Terrace without an alleyway between.

Castlewood subdivision was created by a deed dated May 8, 1896, from Henry J. Peet and wife to the Title Guaranty and Trust Company, later the Chicago Title and Trust Company. The deeds to this subdivision contain the following restrictions as to the property facing Castlewood Terrace:

"1. That the following portion of this instrument shall extend to, embrace, and be binding upon the said party of the second part and the heirs, successors and assigns of said party, and is made and shall exist in favor of and

may be enforced by said trustee and each and every of its successors and assigns of any part or parts of said subdivision fronting on the street known as Castlewood Terrace not above conveyed.

"2. That no building (except bay-windows, porches, porticos and front door steps) shall be built or maintained upon said lot between the building line laid down and designated on the recorded plat of said subdivision and any part of the street designated on said plat as Castlewood Terrace.

"3. That no building (barns, stables and necessary outhouses excepted) shall be built or maintained on said real estate, or any part thereof, unless such building at the time it shall have been built or placed on said real estate shall have cost and have been worth at least $5000.

"4. That no more than one building to be used for a dwelling shall at any time be erected or maintained upon the lot above described.

"5. That no apartment or flat-building or structure built, used or adapted for the separate housekeeping of more than one family shall at any time be built or maintained upon said lot.

"6. That no building or structure built, used or adapted for a livery stable or for conducting any kind of business shall be built or maintained upon said lot.

"7. That no building or structure at any time built or maintained on said lot shall be occupied or used for a livery stable or for conducting any kind of business."

On LaFayette parkway and Ainslie street there was originally a building line restriction of 20 feet and certain restrictions as to enclosed stairways and bay-windows. On May 26, 1906, the Chicago Title and Trust Company, then the owner of all the property facing on Ainslie street and LaFayette parkway, filed with the recorder of deeds a change in the building line restriction as to the lots on those two streets from 20 feet to 10 feet, with a time limit of

twenty-five years, after which there are to be no restrictions. Ainslie street and LaFayette parkway have been built up solidly with three-story apartment buildings, which the bill alleges are now used mainly for rooming houses. The lots of the subdivision facing on Castlewood Terrace have been devoted entirely to single-family residences. Appellant Cuneo owns three lots in Castlewood subdivision on the southeast corner of Sheridan road and Castlewood Terrace, which are improved by his residence and garage. He also owns three lots directly south, facing LaFayette parkway, at the northeast corner of Sheridan road and LaFayette parkway. Harry C. Will at the time of the filing of the original bill herein owned and resided on lot 42 and the west 20 feet of lot 41, facing on Castlewood Terrace, and located in the northeast corner of Sheridan road and Castlewood Terrace, directly opposite across Castlewood Terrace from appellant Cuneo. Cuneo's house faces Sheridan road and the Will house faces Castlewood Terrace. During the pendency of this suit Harry C. Will died and his heirs and trustee were substituted in his stead. Appellants Warren and William M. Wright own two lots facing north on Castlewood Terrace about 250 feet east of Sheridan road. There are approximately twenty-five other property owners who reside on Castlewood Terrace, each owning 50 feet or more. These lots are improved with substantial dwellings. Of these defendants twelve are actively opposed to the removal of these restrictions. All deeds to each of the lots facing on Castlewood Terrace contain the restrictions above quoted. Appellant Cuneo purchased his property in November, 1910, and the next year moved onto the three lots facing Castlewood Terrace a residence, which he now occupies. The three lots owned by him facing LaFayette parkway are vacant. The Wrights purchased their property on Castlewood Terrace in 1926.

The amended bill alleges that at the time of the conveyance of these lots in Castlewood subdivision they were

particularly adapted to and suitable for residence purposes, only. It is alleged that the building line restriction on Castlewood Terrace has been violated by some of the lot owners, naming them, without protest from other lot owners. It is alleged that two have violated the restriction as to conducting business on the lots facing on Castlewood Terrace by renting garages and maintaining buildings on their lots adapted to the conduct of a garage business for profit; that since the purchase of the respective properties conditions have changed about the subdivision and in that neighborhood, particularly on Sheridan road; that the subdivision has become a hotel and apartment district; that Sheridan road at that point has become a leading thoroughfare— one of the main business streets on the north side of Chicago—and at times greatly congested with automobiles and heavy traffic; that on the west side of Sheridan road, directly opposite the property of appellant Cuneo, buildings have been extended to the sidewalk and are devoted almost entirely to stores, offices and other business enterprises, and that the property of appellants has become and is best adapted for business purposes and has ceased to be suitable or desirable for residence purposes. It is also alleged that under the zoning ordinance of the city of Chicago the property of this subdivision abutting on Sheridan road has been zoned as commercial property, the balance of the subdivision has been zoned as apartment property, and because of its adaptability to such purposes is assessed and taxed heavily. The bill further alleges that because of the restrictions contained in the deeds to property abutting on Castlewood Terrace appellants are prevented and hindered from using their property for its highest and best use, thereby greatly depreciating the value thereof, whereby the restrictions contained in the deeds constitute and are a serious cloud upon the title of appellants and should be removed. The cross-bill of the Wrights contains, in effect, the same averments as to the changes in the neighborhood

and the violation of the building restrictions by some of the owners of lots facing on Castlewood Terrace.

The assignments of error raise two questions: First, has the neighborhood surrounding Castlewood Terrace, since the making of the deeds containing the restrictions, so changed in character and environment that the object of the restrictions can no longer be accomplished by their enforcement and it would be inequitable and oppressive to enforce them? And second, are appellees, because some of them built sun porches and other like structures extending beyond the building line, which were not objected to or were consented to by other owners, deemed to have waived or abandoned all restrictions affecting such property?

Restrictions upon the use of property such as were created by the deeds to this subdivision, and which are imposed as a part of a general plan for the benefit of all the lots affected, give to the purchasers of such lots a right in the nature of an easement, which will be enforced in equity, and, upon equitable principles, against owners of other lots so affected. (*Curtis* v. *Rubin*, 244 Ill. 88; *Hutchinson* v. *Ulrich*, 145 id. 336; *Frye* v. *Partridge*, 82 id. 267; *Evans* v. *Faust*, 194 Mass. 513.) Where the intention is clearly shown by the restriction, and the enforcement of such restrictions is necessary for the protection of substantial rights, they will be enforced. The rule in this State likewise is, that equity will not enforce a restriction where, by the acts of the grantor who imposed it or of those who derived title under him, the property and that in the vicinage has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant an injunction against violation of such restriction would be a great hardship on the owner and of no benefit to the complainant, or where the complainant has waived or abandoned the restriction. *Ewertsen* v. *Gerstenberg*, 186 Ill. 344; *Star Brewery Co.* v. *Primas*, 163 id. 652;

*Trustees of Columbia College* v. *Thatcher*, 87 N. Y. 311;
*McArthur* v. *Hood Rubber Co.* 221 Mass. 372, 109 N. E.
162; *Page* v. *Murray*, 46 N. J. Eq. 325.

It will be noted that in this case appellants are complainants seeking to cancel all building restrictions contained in the deeds to the lots as a cloud upon their title. Though this relief is sought only as to their property it is not argued that such restrictions could be removed as to appellant's property and confirmed as to all other property affected by them. Counsel for appellants cite *McArthur* v. *Hood Rubber Co. supra,* as authority for the decree prayed. An examination of that case discloses that while at the time of the creation of the restrictions the neighborhood was a choice residential district, it had at the time of the filing of the bill become wholly given over to manufacturing of an offensive character and to its attendant buildings, stores, cheap lodging houses, tenement houses, and that the property in the neighborhood was valuable only for such uses. Such a case is not analogous, on the facts, to the case at bar. While appellants proved that there had been a great increase in the number of business buildings in that neighborhood and that Sheridan road had become a heavily congested avenue of traffic, with its attendant unpleasant odor of burning gas, noises and vibrations, there is no evidence of any change in the character of the property on Castlewood Terrace, where defendants, appellees in this case, reside and own their homes.

At the time of the original platting of Castlewood subdivision there was no business in that vicinity and very few houses. Now large hotels and office buildings have been erected in the neighborhood, though none on Castlewood Terrace. Ainslie street between Sheridan road and the lake has been built up with apartment houses, as has been LaFayette parkway. This, however, is not a change from the original plan as to these streets. Such is a condition contemplated at the time the restrictions were put

on the property on Castlewood Terrace. The property of Castlewood subdivision abutting on Ainslie street and La-Fayette parkway are under no restrictions against apartment buildings other than as to stairways above the second floor and a building line restriction which is to expire in 1931. It cannot, therefore, be said that these apartment buildings constitute a change from that which was contemplated at the time the subdivision was laid out. When appellants bought their property some of these apartment buildings were there, and they had notice that the restrictions as to the use of that property did not prevent the construction of other buildings of a like character. The restrictions as to Castlewood Terrace are six in number and go much further than those on LaFayette parkway or Ainslie street.

The evidence shows that some of the residents who have built homes on Castlewood Terrace have built porticos or porches or enclosed sun rooms beyond the building line. Considerable argument in the briefs is devoted to the question whether these constitute encroachments, or whether they are permitted by the clause of the restrictions pertaining to such features of building and constitute a popular construction of the building line restriction. That question is not, however, in our opinion, important to the decision of this case. Though it be conceded that the building line restriction has in this particular been violated by some of the lot owners on Castlewood Terrace, there is no evidence of the breach of any other of these several restrictions. Abandonment or acquiescence in the violation of one restriction does not amount to the abandonment of other separate and distinct restrictions material and beneficial to the owners of lots affected by them. *Oliver* v. *Williams,* 221 Mich. 471, 191 N. W. 34; *Ewertsen* v. *Gerstenberg, supra;* Berry on Rest. on Real Prop. sec. 375.

Appellants offered evidence that two of the lot owners on Castlewood Terrace had at different times rented their

garages for profit. In one instance some parties were permitted to live therein for a time, and in another a lot owner rented his garage for a time for the use of his neighbor's car. Such cannot be said to constitute a violation of the sixth clause of the restrictions, against the use or maintenance of a building adapted for conducting any kind of business. There is a marked difference between renting a garage temporarily either for the use of the neighbor's car or for temporary use as living quarters, and conducting a business therein. If such could be considered a business within the sixth restriction, then it might well be questioned whether one who had built a house on premises so affected could rent it as a residence without violating the restriction against conducting a business.

There has been no attempt to violate any of the restrictions governing the character of buildings to be placed upon the premises or the cost or number of the buildings to be built, nor the restriction against apartments or flat-buildings, livery stables and the conduct of a business. Each of these restrictions is separate and independent of the other, and it can scarcely be said that because some of the lot owners on Castlewood Terrace have violated the building line restrictions, if they have, the balance of the lot owners stood by and permitted it to be done, all restrictions have been abandoned. The evident purpose of these restrictions on the property abutting on Castlewood Terrace, differing, as they do, from those on the property abutting on Ainslie street and LaFayette parkway, was and is to preserve the lots facing on Castlewood Terrace as a residence district. The evidence does not show any changes in this character of these lots. While changes have taken place on Sheridan road, and appellants' property abutting on that street would doubtless be more valuable as commercial property than as residence property, yet equity cannot, on that ground alone, abrogate and set aside restrictions on the use of that property which have been made for the benefit of

other property which has not been so changed. While it may be a financial hardship upon appellants to enforce the single-dwelling restrictions on their lots, yet it must be borne in mind that these restrictions were in the deeds which they took to the property and are made for the benefit of all of the lots on Castlewood Terrace. If the character of the property on Castlewood Terrace had by the acts of the owners thereof changed to the extent justifying a court of equity to remove restrictions that court should not hesitate so to do, but the fact of change in the neighborhood of the property on Castlewood Terrace does not, alone, warrant a court of equity in relieving the property of appellants here from the restrictions imposed. They admit that they knew when they purchased their respective lots, of these restrictions on the use to which they could put their property. Doubtless the knowledge of these restrictions to some extent affected their judgment as to the price which they should pay for these respective lots. Having purchased them subject to restrictions they are bound by them so long as the restrictions are reasonable and not contrary to some public policy or some positive rule of law. *Frye* v. *Partridge, supra; Turney* v. *Shriver,* 269 Ill. 164; *VanSant* v. *Rose,* 260 id. 401.

What has been said with reference to the property of appellant Cuneo and the heirs of Harry C. Will applies with especial force to the position of the Wrights. In addition it must be said that there has been but little change, even in the outside conditions, since the purchase of the property by them in 1926. These conditions very largely existed at the time they purchased the property subject to the restrictions contained in their deed.

Equity could not do justice to all the parties to this lawsuit by removing these restrictions on the property of appellants. The defendant Peter Reisenhaus, who owns the lot next to appellant Cuneo and who has a valuable home thereon, would find his property much damaged if

the lot next to it on the west was devoted to commercial or apartment purposes. And so with others. Equity will remove such restrictions only when to do so will not unjustly injure other property. That situation does not exist here.

The chancellor was right in dismissing the bill and cross-bill. The decree will be affirmed.

*Decree affirmed.*