## GRADY v. GARLAND et al.
### No. 6555.

United States Court of Appeals for the District of Columbia.

Argued Jan. 5, 1937.
Decided Feb. 23, 1937.

818

STEPHENS, Associate Justice, dissenting.

———◆———

Elisha Hanson and Eliot C. Lovett, both of Washington, D. C., for appellant.

R. Carmack Waterhouse, Randolph M. Garland, and Harold P. Ganss, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

Appellant, plaintiff below, filed a bill of complaint in the Supreme Court of the District of Columbia (now the United States District Court for this District), seeking the removal of a cloud upon his title to lot 99 in square 3105 in the District of Columbia, the cloud being in the form of a restrictive covenant.

It appears that, during the years from 1901 to 1905, the real estate firm of Middaugh & Shannon erected a group of eight houses in square 3105, which square is bounded on the north by S street N. W. and on the west by First street N. W. Six of these houses, immediately adjoining each other, face west on First street, the house at the north end of the row being at the northwest corner of the block. The other two houses, which also adjoin each other, are immediately around the corner on S street, facing north. The six houses on First street are erected on lots

97 to 102, inclusive. The two houses on S street are erected on lots 103 and 104, which extend south adjacent to the rear of lots 97 to 102, inclusive, lot 103 lying immediately behind the First street lots and lot 104, adjoining lot 103, extending south along and adjacent to an alley which runs south from S street through the block.

These eight lots were conveyed to individual grantees, the deed in each instance containing the following covenant: "Subject also to the covenant that said lot shall never be rented, leased, sold, transferred or conveyed unto any negro or colored person under a penalty of two thousand dollars ($2,000), which shall be a lien against said lot."

Plaintiff Grady, as the owner of lot 99, brought this suit on behalf of himself and on behalf of the owners and parties interested in lots 97, 98, 100, 101, and 102. The relief prayed for in the bill is not only that the cloud be removed from the titles to lots 97 to 102, inclusive, but also that "the restrictive covenants of record in the deeds to Lots 103 and 104 in Square 3105 be decreed to be clouds upon the titles of the owners thereof, impeding the free use and enjoyment of their properties, and that the same in their entirety be cancelled, removed, and held for naught."

The defendants, owners of lots 103 and 104, answered and moved the court for a dismissal of the bill. From a decree granting the motion to dismiss, this appeal is taken.

While it is true that the averments of the bill are admitted by the motion to dismiss, we think the bill wholly fails to allege facts sufficient to justify the granting of the relief sought. The bill merely alleges, in effect, that by reason of the occupancy by colored persons of the territory immediately west of the property in question, plaintiffs' property has been damaged and that it could not result in damage to the defendants to have the restriction removed. These are merely conclusions, not supported by any facts alleged in the bill, since there are no averments to the effect that the property has been rendered less valuable for rental purposes or for sale, or that the character of the environment would make it unfit or unprofitable for use by the enforcement of the restriction, or that a material change has occurred in the environment since plaintiffs acquired title to their respective properties—all of which are facts important to

be considered in an action for the removal of the restriction.

It appears that the properties fronting for one block north and for several blocks south on First street, as well as the properties lying for many blocks west of First street, are occupied by colored residents. This is true with few exceptions. On the other hand, it was conceded at bar that the properties on S street east of First street, as well as the properties fronting on North Capitol street, the next street east of First street, for one block south of S street, and for many blocks north thereof, as well as the properties lying to the east of North Capitol street, are occupied exclusively by white residents.

The properties of the defendants, lots 103 and 104, extend along the rear of lots 97 to 102, inclusive, for the entire combined width of the last-mentioned lots. Defendants insist that the value of their properties for the purposes which induced their purchase, i. e., their personal use and enjoyment, would be seriously impaired as a result of the occupancy of plaintiffs' properties by colored residents. And we cannot say that their contention is unreasonable. This is not a case where the restricted properties are rendered useless for the purpose for which restricted because of the invasion of business, but a case where a number of the owners of the restricted properties are attempting to impose upon others within the restricted area a change in the racial character of the residents, the very thing which the covenant prohibits.

The question here presented is whether or not the restrictive covenant should be enforced, if its enforcement would result in hardship to the plaintiffs without benefiting the defendants; or whether it should be enforced if it appears that such a change in the character of the neighborhood has occurred as to defeat the object and purpose of the covenant.

■ This is not a case where the matters complained of are foreign to the grounds upon which the restriction is based. It might be that under such circumstances surrounding conditions would be sufficient to justify the removal of the restriction, but the restriction here is against the disposal of the property in question to colored people, and the complaint now is that colored people are living in the adjoining neighborhood, to the damage of these complainants. The restriction is for the protection of the property to which it applies, and is not affected by similar conditions which may arise in adjoining property. Castleman v. Avignone, 56 App.D.C. 253, 12 F.(2d) 326. The object of the restriction here was to prevent the invasion of the restricted property by colored people, not the invasion of property surrounding it.

If the facts here alleged were sufficient in equity to justify the setting aside of the covenant of restriction, all that would be necessary to defeat such a covenant would be the settlement of a few colored families in the immediate vicinity of the restricted area. In Kenealy v. Chevy Chase Land Co., 63 App.D.C. 327, 329, 72 F.(2d) 378, 380, where the court was considering a restriction against the use of property for business purposes or for apartments, the court said: "Evidence was offered by appellants that the removal of the restrictions would enhance five-fold the value of their holdings in 38 over 3. As the court observed in Smith v. Lynch, 233 Mich. 6, 206 N.W. 362, 363, if the restrictions must give way for such a reason, 'then all that will be necessary in the future to destroy any subdivision will be for speculators and others interested to surround it with business places.' It is apparent that the enhancement in value of appellants' holdings would be at the expense of all those who bought their homes in reliance upon the general plan or scheme."

■ A mere glance at the present situation demonstrates the protection which the restriction is to the defendants Murgia and Garland. It furnishes a complete barrier against the eastward movement of colored population into the restricted area—a dividing line. In such circumstances, a court of equity will not, under the meager averments of this bill, strike down the restrictions as to the property of the plaintiffs, when it will injure or be destructive of the value of the defendants' property, and where they are both included in the same restriction. Cuneo v. Chicago Title & Trust Co., 337 Ill. 589, 169 N.E. 760, 764.

■ The validity of covenants and agreements of this nature has been generally upheld, especially in this District. Corrigan v. Buckley, 55 App.D.C. 30, 299 F. 899 (appeal dismissed, 271 U.S. 323, 46 S.Ct. 521, 70 L.Ed. 969). These covenants constitute valid and solemn contracts and should not be lightly set aside. We think that existing local conditions, the growth and expansion of the National Capital, and

its constant tendency to changes in the use and occupancy of property, require the holding that valid restrictive covenants are intended primarily to protect the property included in the restricted area, and should not be set at naught merely because of conditions affecting the surrounding territory.

The decree is affirmed with costs.

STEPHENS, Associate Justice (dissenting).

Assuming, under the motion to dismiss of the defendants Garland, the truth of the assertions of the bill of complaint, a cause of action in equity for removal of the restrictive covenants is, in my opinion, stated. I think it a well settled rule that where changes either within or without an area covered by restrictive covenants have been of such nature as to cause perpetuation of the covenants to be a heavy burden on property owners seeking to be relieved of them, and of no substantial benefit to those opposing their removal or non-enforcement, equity will grant relief either by refusing to enforce the covenants or by removing them, as the bill seeks. Downs v. Kroeger, 200 Cal. 743, 254 P. 1101; Hurd v. Albert, 214 Cal. 15, 3 P.(2d) 545, 76 A.L.R. 1348; Jackson v. Stevenson, 156 Mass. 496, 31 N.E. 691, 32 Am.St.Rep. 476; Trustees of Columbia College v. Thacher, 87 N.Y. 311, 41 Am.Rep. 365. These cases involved covenants against the erection of buildings other than residences. Clark v. Vaughan, 131 Kan. 438, 292 P. 783. This involved a covenant against sale or lease of property to colored persons.

I think the majority opinion denies effect to the rule stated and assumes to establish as conditions precedent to the removal, or non-enforcement, of restrictive covenants either a change from white to colored occupancy in the very properties protected by the covenants or a change to another type of use, as, for example, from residential to business. As to the first alleged condition, it seems necessarily predicated upon the proposition that a person seeking to remove a covenant must show that he has breached it himself, and that the person for whose benefit the covenant runs has ignored that breach. I find nothing in the authorities warranting this. As to the second alleged condition, change in type of use has no relationship to covenants against colored occupancy.

I think the position of the majority unsuited to a growing community where changes not only in population but also in the character of property from residential to business are highly probable.