**BOGAN et al. v. SAUNDERS et al.**
**Civ. A. No. 38276.**

District Court of the United States for the District of Columbia.

May 7, 1947.

Henry Gilligan and James A. Crooks, both of Washington, D. C., for plaintiffs.

Leonard C. Collins, of Washington, D. C., for defendants William L. Saunders, Josephine Saunders, and Florence E. Urciolo.

Raphael G. Urciolo, of Washington, D. C., appeared in pro per.

KEECH, Associate Justice.

This is an action (1) to enjoin pendente lite and permanently the defendants from selling, renting, leasing, transferring, or conveying Lot 25, Square 3123, improved by premises 83 W Street, N. W., in the District of Columbia, to negroes or persons of the negro race or blood; (2) to enjoin pendente lite and permanently the defendants William L. Saunders and Josephine Saunders, their agents, servants, employees, and all persons in active concert and participation with said defendants who are negroes or persons of the negro race or blood, from renting, leasing, or using, or in any manner occupying said premises, and to direct them to vacate and remove therefrom all household goods and other property to them belonging; and (3) to declare null and void the deed dated October 2, 1946, and recorded October 17, 1946, from the defendant Urciolo to the defendants Saunders, and to declare said deed to be canceled and title to said property in Florence E. Urciolo, subject to the provisions of the restrictive agreement dated March 23, 1946.

Prior to the hearing on this case Raphael G. Urciolo, husband of Florence E. Urciolo, sought leave to intervene on the basis that the said Florence E. Urciolo was "merely a straw", that proper representation of Raphael G. Urciolo could not be made by the said Florence E. Urciolo, and that said Raphael G. Urciolo might be bound by judgment in this action. He was permitted to intervene and participated in the proceeding.

This cause grows out of a restrictive agreement entered into between all of the owners of property located on W Street, N. W., facing north and south, between North Capitol and First Streets, save the owners of premises 7 and 13 W Street, N. W. The agreement bears date of March 23, 1946, and was recorded on July 29, 1946.

Title to premises 83 W Street was transferred from Blanche Vance, one of the signers of the restrictive agreement to the defendant Florence E. Urciolo by deed dated September 30, 1946, and recorded October 17, 1946. The said premises were then conveyed by the defendant Florence E. Urciolo to the defendants Saunders by deed dated October 2, 1946, and also recorded on October 17, 1946. Both of the con-

veyances were subsequent to the recording of the restrictive agreement.

The defendant-intervener, Raphael G. Urciolo, is a real estate broker and has been a party to litigations concerning similar convenants and restrictive agreements in this area. The record discloses that— apart from his general knowledge of the area, which he characterized as "peculiar" —the defendant-intervener Urciolo testified that he knew of the restrictive agreement covering 83 W Street at the time of settlement, that he advised the defendants Saunders of the restrictive agreement, and that they bought the property in question with knowledge of the restriction and with the understanding that, if the restrictive agreement be held valid, he would make them whole by refunding the money paid by them, plus six percent interest. Thus, all the defendants had actual as well as constructive notice of the restrictive agreement.

 In determination of this cause, the Court is required by pronouncements of the United States Supreme Court and the United States Court of Appeals for the District of Columbia to find, as a matter of law, that restrictive agreements and covenants such as here involved are valid. Corrigan v. Buckley, 55 App.D.C. 30, 299 F. 899; Id., 271 U.S. 323, 46 S.Ct. 521, 70 L.Ed. 969; Mays v. Burgess, 79 U.S.App.D.C. 343, 147 F.2d 869, certiorari denied, 325 U.S. 868, 65 S.Ct. 1406, 89 L.Ed. 1987. This is, of course, subject to the requirement that the necessary formalities in execution of the agreement have been complied with.

 No serious question as to the validity of the restrictive agreement was raised by the defendants because of the failure of the owners of premises 7 and 13 W Street to sign. The record shows that those premises were at the time of the signing of the agreement and are at present owned and occupied by white persons. It is not necessary that one hundred percent of the owners of property sign in order to give such an instrument validity, 'similar restrictive agreements having been held valid where there was mixed occupancy in the very block subject to the agreement.

Defendants challenge the validity of the agreement because of the method adopted in procuring the signatures and acknowledgments to the instrument. The Court assumes that all the signatures were not procured on the same date, as is the case in most documents of this type. Furthermore, the record discloses that acknowledgments of the signatures were not taken on the date of signature in all instances, nor were all acknowledgments taken on the same day.

With reference to this challenge, plaintiffs introduced Col. Joseph A. Bayer, a notary public in and for the District of Columbia, who resides at 22 Bryant Street, N. E., in the immediate vicinity of the property here involved. Counsel for defendants conceded Colonel Bayer's qualifications as a notary.

 It was conceded that the jurat conforms to the statute save as to the omission of the word "well" in the phrase "personally well known to me," but this is not a material omission. "It is the policy of the law to uphold certificates when substance is found, and not to suffer conveyances, or the proof of them, to be defeated by technical or unsubstantial objections." Carpenter v. Dexter, 8 Wall. 513, 75 U.S. 513, 526, 19 L.Ed. 426; Black v. Aman, 6 Mackey 131, 17 D.C. 131.

The testimony of the notary showed not only that he has a keen understanding of his duties as a notary, but that he is familiar with the neighborhood covered by the agreement and many of its residents, and that in all cases where the signer was not personally well known to him he was most meticulous in having such signer properly introduced to him before taking the acknowledgment, save when he went to the home and the residents thereof signed and acknowledged in his presence.

 Under all the facts, the Court finds that in execution of the agreement there has been substantial compliance with the statute, and no detriment or fraud has been perpetrated on any one of the defendants. Especially is this true in the absence of any testimony on behalf of defendants challenging the validity of the signatures r

acknowledgments. The Court therefore finds that the restrictive agreement was properly executed and duly recorded, and that its terms, including the duration of twenty-one years, are valid under existing law, as enunciated by the Supreme Court and our Court of Appeals.

The restrictive agreement being valid and duly recorded, anyone subsequently buying any of the properties subject thereto bought with notice of the agreement and was bound thereby as if he had been a party to it.

The only other question for determination is whether or not changes in conditions have occurred since execution of the restrictive agreement which would make enforcement unreasonable or inequitable under the doctrine followed by the Court of Appeals in Hundley v. Gorewitz, 77 U.S. App.D.C. 48, 132 F.2d 23. Counsel for the principal defendants, William L. Saunders and Josephine Saunders, frankly stated that he was not relying on this point. It was not urged very strongly, if at all, by the defendant-intervener Urciolo, doubtless for the reason that the agreement was entered into on March 23, 1946, and the conveyance complained of occurred on October 2, 1946, less than seven months later.

The record discloses that at the time of the entry into the agreement all of the properties facing north and south on W Street between First and North Capital Streets were owned and occupied by white persons; that this condition continued up to and including the trial, save as to premises 83 W Street, the property here involved, which was sold to negroes by deed dated October 2, 1946.

The record further shows that North Capitol Street from Rhode Island Avenue to above Channing Place is occupied by white persons, and that the east and west cross streets north of Rhode Island Avenue to the Reservoir between North Capitol Street and First Street have white ownership and occupancy, save one property, premises 56 Adams Street, which was bought by a negro in December, 1946. The latter premises are at the present time subject to lease by white persons, but the negro owner has indicated an intent to occupy the premises at the expiration of the lease. First Street in the block north of W Street to Adams Street subject to mixed occupancy, and north of Adams Street is occupied by white persons. First Street in the block immediately to the south of W Street is generally colored, while the block between V and U Streets is white. The area west of First Street is predominantly colored, but the area east of North Capitol and north of Rhode Island Avenue is predominantly white.

At the hearing contention was made that premises 2133 First Street, N. W., situated on the southeast corner of First and W Streets, not covered in the restrictive agreement, and owned and occupied by negroes, is comparable to premises 83 W Street, situated on the north-east corner of First and W, which was included within the restrictive agreement and was occupied by white persons until subsequent to its purchase by the defendants Saunders.

■ At the instance of all counsel the Court viewed the scene. While it is true that premises 2133 First Street and premises 83 W Street both occupy corner lots at the same intersection, there are substantial differences. Premises 83 W Street bears an official "W Street" address and its entrance is on W Street (no entrance on First); whereas the First Street premises are officially known as "2133 First Street", and the front entrance is on First Street at the south side of the building, the point farthest from W Street. While the rear of 2133 First Street may be reached from the side yard on W Street after passing through two gates, the rear entrance bears a relation to the lot similar to the front entrance and is some feet away from W Street. The Court therefore is of the opinion that the negro occupancy of 2133 First Street does not affect the white residential character of the W Street neighborhood covered by the restrictive agreement.

■ There has been no showing of any change in the neighborhood subject to the restrictive agreement, and, save for the sale of 56 Adams Street to a negro, no showing has been made of any change in

the general area. This does not constitute such infiltration as to render the agreement unreasonable or inequitable.

■ In Grady v. Garland, 67 App.D.C. 73, 75, 89 F.2d 817, 819,* which involved a similar restrictive covenant, where areas adjacent to the restricted properties were occupied by colored persons, the Court of Appeals stated:

"* * * The restriction is for the protection of the property to which it applies, and is not affected by similar conditions which may arise in adjoining property. Castleman v. Avignone, 56 App.D.C. 253, 12 F.2d 326. The object of the restriction here was to prevent the invasion of the restricted property by colored people, not the invasion of property surrounding it.

"If the facts here alleged were sufficient in equity to justify the setting aside of the covenant of restriction, all that would be necessary to defeat such a covenant would be the settlement of a few colored families in the immediate vicinity of the restricted area. * * *"

■ In Mays v. Burgess, supra, after declaring an identical covenant valid, the Court of Appeals stated the only question open for discussion was whether the purpose of the restrictive conditions had failed by reason of a change in the character of the neighborhood so that its enforcement would impose a hardship, rather than a benefit, upon those who were parties to its terms. The Court there quoted from its opinion in Hundley v. Gorowitz, supra [77 U.S.App.D.C. 48, 132 F.2d 24], which stated as the exception to the general rule that courts will uphold covenants of this type. "Whenever * * * it is shown that the purpose of the restriction has been frustrated and that the result of enforcing it is to depreciate rather than to enhance the value of the property concerned, a court of equity ought not to interfere."

It must be assumed that the signers of the restrictive agreement at the time of signing it were conscious of changes in ownership and occupancy from white to negro not only in the city at large, but in areas adjacent to their neighborhood, as to which the records of this Court, as well as the Court of Appeals, and a view of the area leave no doubt. With this in mind and desiring to maintain the white residential character of their immediate neighborhood, they took the necessary step to protect themselves from such encroachment, and entered into the covenant for the sole purpose of preserving their neighborhood as a white residential area. The only attempt to frustrate this purpose is the defendant Urciolo's sale of premises 83 W Street to the defendants Saunders.

■ As to property values, counsel for one of the defendants proffered testimony to the effect that sales to negroes bring a larger price than sales to white persons, and that this is true not only as to the first sale of a property, but as to subsequent sales in the vicinity. Urciolo, on his own behalf as defendant-intervener, stated that the price realized from sale of property to negroes increases after the first sale. On objection by plaintiff, the testimony was refused and proffer noted. Such testimony would have been of no probative value to show changed conditions or depreciation in values in the neighborhood covered by the restrictive agreement since entry into the covenant. Any evidence which might show that the property could be sold for a greater price if the restriction be lifted is not relevant or material, any more so than testimony in support of an application for change in zoning to the effect that prices are enhanced by a change from residential to commercial use. In each of these situations it is incumbent upon the person seeking the change to show such changed conditions as to render the existing restriction unreasonable. No such showing was made by the defendants in this case.

There was no evidence of inability on the part of any of the parties to the restrictive agreement to sell to white persons at a reasonable figure. On the contrary, the stipulation (as well as the agreement itself) indicates that three properties in the block were sold to white purchasers during the four-month period between the date of the

---

* Certiorari denied, 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536.

restrictive agreement and the date of its recording, and the new owners signed the agreement and acknowledged their signatures to it.

 The fact that the area encompassed by the agreement is relatively small, embracing 69 properties, on both sides of W Street in a long block between North Capitol and First Streets, rather than an area of several squares, is unimportant. The Court has been shown no authority which requires that a restrictive agreement cover any given number of pieces of property. On the contrary, restrictive agreements of this type have been sustained by the Court of Appeals when the number of properties was less. In Corrigan v. Buckley, supra, 30 owners of 25 parcels of land were parties to the covenant there upheld. In Cornish v. O'Donoghue, 58 App.D.C. 359, 30 F.2d 983, a covenant covering 34 properties, 17 on each side of the block of First Street, N. W., between Adams and Bryant Streets, was upheld.

In the instant case, the reasonableness of the agreement is indicated by the fact that the owners of each house facing on W Street between North Capitol and First Streets, with the exception of premises 7 and 13, which are owned and occupied by whites, were subscribers to the agreement, and at a time when there were no negroes in the block.

There has been no showing of a change in conditions by way of infiltration into the neighborhood covered by the agreement since entry into the agreement, such as to defeat its purpose. There has been no showing that the one change from white to colored occupancy in the general neighborhood since the execution of the agreement, namely, 56 Adams Street, constitutes such a change in conditions as to result in depreciation of the value of the W Street properties for white occupancy. There has been no showing that enforcement of the restriction would impose a hardship rather than a benefit upon those who are parties to its terms. Thus, there is no reason why the illegal purchase of one of the properties included in the agreement by a negro, with notice, should deny to the other parties to the agreement the protection which they sought by entering into the arrangement. The time which has elapsed since execution of the agreement is but short, and the purpose of the agreement is as existent now as at the time of its making.

In view of the findings of fact heretofore made and the law applicable thereto, the permanent injunctive relief herein prayed will be granted.

The costs of suit shall be borne by defendant-intervener Raphael G. Urciolo.

Counsel will present order of court consistent with this memorandum, on notice to opposing counsel and defendant-intervener.