## RUSSELL et al. v. WALLACE et al.

Court of Appeals of the District of Columbia.
Submitted January 8, 1929. Decided
February 4, 1929.

### No. 4745.

Charles A. Douglas, Jo V. Morgan, and George E. C. Hayes, all of Washington, D. C., and Louis Marshall, of New York City, for appellants.

Jesse C. Adkins, Frank F. Nesbit, and Lucien H. Mercier, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellees, plaintiffs below, filed a bill in equity in the Supreme Court of the District of Columbia to restrain the defendants Russell from conveying a certain piece of real estate, known as 77 Randolph place, in the city of Washington, to the defendants Newton and Peterson, who are alleged to be of the Negro race; and to decree a conveyance executed by the defendants Russell to the defendants Newton and Peterson null and void, and that defendants be required to vacate the premises.

From a decree granting the relief prayed this appeal was taken.

The action is based upon an agreement entered into between the property owners on Randolph place, providing that for themselves, their respective heirs, assigns, and successors in interest, no part of said land "shall be, during the life of this indenture, used or occupied by, or sold, conveyed, leased, rented, or given to negroes or any person or persons of the negro blood or mixed negro blood, or to any other person or persons of any race other than the white or Caucasian race."

The validity of a contract of this sort has been upheld by this court in Corrigan v. Buckley, 55 App. D. C. 30, 299 F. 899, and in Torrey v. Wolfes, 56 App. D. C. 4, 6 F.(2d) 702. We find nothing in the present

agreement to distinguish it from the contracts under consideration in those cases; hence there is no occasion for further consideration of this ground of appeal, as we will adhere to our former decisions.

■ The agreement was duly recorded before the conveyance from Russell to Newton and Peterson was made; hence Newton and Peterson took with notice of the existence of this restriction. It is contended, however, by the appellants Russell that prior to the date of recordation they released themselves from the obligation of the contract by means of a letter written on May 18, 1926, the material part of which is as follows: "We find it absolutely necessary to withdraw our signatures from the covenant you persuaded us to sign last fall. We feel that we have for years done all that we possibly could to assist you in maintaining a white neighborhood. We signed with the understanding that the covenant was null and void unless everyone in the block signed. We know that everyone has not signed. Moreover, we signed after being assured that some of the residents concerned had signed, who have since advertised and sold. Every effort on our part has been put forth to avoid this, we have wasted money, time and strength, not to mention hours and hours of anxiety, and now we cannot meet our obligations. We will appreciate any suggestions or help that you can give us." This letter was written about two years prior to the date on which the covenant was recorded, and was addressed to the Citizens' Association of Bloomingdale.

The agreement provided, among other things: "That this indenture shall not become effective or binding upon any of the parties hereto until all the signatures hereto affixed are duly acknowledged before a Notary Public or other officer empowered to administer oaths in such cases, and further until this indenture is recorded in the office of the Recorder of Deeds of the District of Columbia." It is urged by the appellants that under this provision of the contract the letter operated as a withdrawal from the agreement, inasmuch as it was written before the contract had been recorded.

It will be observed, however, that this provision of the covenant defines merely the time when it shall become effective, and furnishes no method by which those who have attached their signatures may individually withdraw. Such withdrawal could only become effective by operation of law, through the failure to complete and record the instrument within a reasonable time. The covenant provides within its terms a method to be pursued in case revocation is desired or thought necessary for the best interests of all parties concerned. Under those circumstances it provides: "The same may be revoked and annulled, and the land affected by it freed from the operation thereof as completely as though it never had been executed, upon the recording in the office of said Recorder of Deeds of an agreement to that effect signed and duly acknowledged * * * by all the then owners of the above described land now owned by the parties hereto."

The chief consideration for the contract was the mutual promise and covenant of the signers, each with the other. Mutual agreements of this kind, entered into for a valuable consideration, are upheld on the theory that the subscribers are banding together for the accomplishment of an object which is of common interest to all, and which can only be attained by their combined performance. The consideration for each subscriber is the promise already made by others who have signed or by those who will subscribe. The contract becomes, therefore, of such a nature that a subscriber may only withdraw when an unreasonable time has been consumed in procuring the signatures of all the parties who are required to make up the agreement.

In Waters v. Union Trust Co., 129 Mich. 640, 643, 89 N. W. 687, 688, the court, disposing of the contention that the death of the subscriber to a church building fund revoked his subscription, said: "If the subscription were regarded as a mere offer, this contention would be sound. But as we have seen, it is something more; it is a contract upon consideration. The cases cited by appellant to support the claim that death revoked such a promise as this are all cases where the decedent might himself have revoked the promise at the time of his death, and we think that the rule should apply only to such cases. * * * There can be no doubt that, to make this promise binding upon the deceased, it is essential that the condition precedent be performed within a reasonable time."

■ In the present case all the signatures and acknowledgment of all the owners on Randolph place was a condition precedent to carrying this agreement into effect. Consequently, when appellants signed and acknowledged the contract, the association had a reasonable time within which to secure the signatures of the owners. In determining what constitutes a reasonable time, the nature of the contract, the diligence used, and all the facts and circumstances must be taken into consideration. Geiger v. Kiser, 47 Colo. 297, 107 P. 267; Sallee v. McMurry, 113 Mo.

App. 253, 88 S. W. 157; Goodall v. Streeter, 16 N. H. 97.

The question of what constitutes a reasonable time is a finding of fact by the trial court based upon the evidence in the case, and this court will not assume to set aside that finding, unless it appears that there has been manifest error. Ellison v. Splain, 49 App. D. C. 99, 261 F. 247; McLarren v. McLarren, 45 App. D. C. 237. A review of the evidence, we think, amply sustains the conclusion reached by the trial court that the time consumed in procuring the signatures was not so unreasonable as to furnish a legal basis for a subscriber's withdrawal from the agreement.

Objection is made to the validity of the signature of a Mrs. Beale, who had the legal title and beneficial use of a piece of property on Randolph place for her life, with unrestricted power of sale. This power vested in her the authority to control the property in any respect reasonably necessary to protect it or make it more useful, valuable, or salable. The present covenant had these objects in view; hence, under the power of sale, she was vested with authority to execute this agreement. Valentine v. Schreiber, 3 App. Div. 235, 38 N. Y. S. 417; Simmons v. Crisfield, 197 N. Y. 365, 90 N. E. 956, 26 L. R. A. (N. S.) 663; Gulf Red Cedar Lumber Co. v. O'Neal, 131 Ala. 117, 30 So. 466, 90 Am. St. Rep. 22.

Objection is also made to the power of one John J. McCue to place this restriction on No. 25 Randolph place. The subscriber took title under a will of the real estate of Mary M. McCue. He was the residuary devisee under the will; the only other beneficiaries being two daughters, who were willed $50 each. All the debts had been paid and the legacies satisfied prior to the recording of the agreement herein, and, as title vested in McCue at the time of the death of the testatrix, he had full authority to enter into the covenant.

The further objection that he added after his signature the word "Executor" is of no concern, since it merely identified him as the person named in the will as such. His title was not derived from the fact that he was executor under the will, but the fact that he was the residuary devisee. The annexing of the word to his signature neither added to nor detracted from the validity of the transaction. Norris v. Harris, 15 Cal. 226; Mills v. Herndon, 60 Tex. 353.

It is unnecessary to consider some further objections interposed which we find are without merit. Nor will we stop to discuss the doubtful right of appellants, by reason of their lack of interest, to challenge the validity of the conveyance, as to the parties Beale and McCue.

The decree is affirmed, with costs.