## EDWARDS v. WEST WOODRIDGE THEATER CO., Inc.

### No. 5212.

Court of Appeals of District of Columbia.
Argued Nov. 4, 1931.
Decided Dec. 14, 1931.

John U. Gardiner, of Washington, D. C., for appellant.

D. Edward Clarke, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

The appellee, plaintiff below, filed a bill in equity in the Supreme Court of the District of Columbia against the defendant to cancel and annul certain restrictions on two lots of unimproved land at Sixteenth and Rhode Island Avenue N. E., in the city of Washington.

It appears that the Groves Park Company, a Virginia corporation, formerly owned the subdivision in which the plaintiff's lots are situated. The business of the company was confined principally to the development of the subdivision and the sale of lots therein. In the sale of the lots a special form of deed was used in which were certain restrictions and reservations; the first restriction forbade the sale or rental of the property conveyed to any person of negro descent, and the second placed a limitation upon the kind and cost of buildings to be erected on the lots. After creating these restrictions, the deed contained the following clause: "That if there was any violation of the said covenants and conditions, and such violation was continued after receiving sixty days' notice in writing to discontinue the same, from said Groves Park Company, or any person having title through or under it, that it would constitute an annulment of the deed and the property would revert to the Groves Park Company, its successors or assigns." The Groves Park Company sold one of the lots in question to John A. Foley and the other adjoining it to Thomas F. Foley, using the special form of deed provided in the conveyancing. The Foleys later conveyed the lots to the plaintiff, using substantially the same form of deed as in the conveyance to them. The deed also contained a clause to the effect that the property was conveyed subject to the covenants and conditions set forth in the deed from the Groves Park Company to them.

About the year 1924 the Groves Park Company ceased to exist under an order of the corporation commission of Virginia, for failure to pay its state taxes. Before it went out of existence, however, it transferred to defendant, Edwards, all of its property, including all the remaining lots unsold, and its property of every description that it owned, including all rights under deed to lots already sold or transferred, and Edwards continued to do business and is now selling lots in the said subdivision. Edwards, at the time the transfer was made, owned all the capital stock of the Groves Park Company.

There is no controversy as to the facts, but the plaintiff contends that the provision for reversion in the deed made the restrictions conditions subsequent, and that the Groves Park Company being no longer in existence, the restrictions could not be enforced, and prayed that, as the restrictions affected the loan value of the property, the same be declared null and void. The court below entered a decree for the plaintiff, and from the decree this appeal was taken.

 It is not unusual for persons, companies, or corporations, in the development of tracts of land for sale in lots and parcels, to place restrictions upon the use, sale, location, height, and character of buildings. This may be done in furtherance of a general plan of improvement in a particular locality. Equity will enforce covenants or contracts so restricting or limiting the use of land without particular regard to the manner of their creation. They may be created by reservation in the conveyance, or by a condition annexed to the grant, by a covenant, or even by a parol agreement of the grantee.

In Whitney v. Union Ry., 11 Gray (Mass.) 359, 364, 365, 71 Am. Dec. 715, the court used the following language: "The validity of agreements similar to those in the plaintiff's deed to White has been also recognized and established, and their performance enforced in equity, as against subsequent purchasers with notice, upon the ground that such stipulations create an easement or privilege in the land conveyed, for the use and benefit of the grantor, and those who might afterwards claim under him as owners of adjacent land, of which the land granted originally formed a part. * * * When therefore it appears by a fair interpretation of the words of a grant that it was the intent of the parties to create or reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, and originally form-ing with the land conveyed one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee, and the right and burden thus created will respectively pass to and be binding on all subsequent grantees of the respective lots of land."

This court has in many cases sustained covenants similar to the one here in question, especially covenants similar to that contained in Torrey et al. v. Wolfes et al., 56 App. D. C. 4, 6 F.(2d) 702, 703, as follows: "Subject to the covenant that said lots shall never be rented, leased, sold, transferred, or conveyed unto any negro or colored person under a penalty of two thousand dollars, which shall be a lien against said lot." Upholding this restriction, the court said: "It is apparent that each of the parties to this action, plaintiffs as well as the defendant Torrey, when they purchased their homes, subjected themselves to the restrictive covenant, not only for their own protection, but upon the assurance that a similar restriction would rest upon all other property embraced in the Middaugh and Shannon Development on Randolph Place."

In Chevy Chase Land Company v. Poole, 48 App. D. C. 400, the erection of a store building was enjoined because in violation of representations made by the development company that the land within certain limits would be used exclusively for homes. On this point, the court said: "The purchaser, having submitted to a burden upon his own land with the understanding that a similar burden is to be placed upon the remaining land of the grantor for the common benefit of all, will be relieved from an attempt by the grantor or third party with notice to depart from the general scheme." A similar restriction was upheld in McNeil v. Gary, 40 App. D. C. 397, 46 L. R. A. (N. S.) 1113.

 Nor is it objectionable to the restriction here in question that its violation submits the guilty party to a forfeiture. In Watrous v. Allen, 57 Mich. 362, 24 N. W. 104, 107, 58 Am. Rep. 363, Chief Justice Cooley, delivering the opinion of the court, said: "Those cases in which it is held that the fact that a penalty or forfeiture is imposed for doing a prohibited act is no obstacle to the interposition of equity by injunction, rest on the same principle. French v. Macale, 2 Drury & War. 269; Coles v. Sims, Kay, 56; 5 De Gex, M. & G. 1; Barret v. Blagrave, 5 Ves. 555; Hardy v. Martin, 1 Cox, 26. So do cases in which specific performance is decreed, notwithstanding the contract provides for stipulated dam-

ages. Fox v. Scard, 33 Beav. 327; Howard v. Woodward, 10 Jur. (N. S.) 1123. This is perfectly reasonable and equitable; for the penalty, forfeiture, or fixed damages are only agreed upon to render it more improbable that the act against which they are directed will be committed."

■ Neither does a provision similar to the one in the case at bar deprive the citizen of any constitutional right. In Corrigan v. Buckley, 55 App. D. C. 30, 31, 299 F. 899, 901, the court, considering a restriction similar to the one here involved, said: "The constitutional right of a negro to acquire, own, and occupy property does not carry with it the constitutional power to compel sale and conveyance to him of any particular private property. The individual citizen, whether he be black or white, may refuse to sell or lease his property to any particular individual or class of individuals. The state alone possesses the power to compel a sale or taking of private property, and that only for public use. The power of these property owners to exclude one class of citizens implies the power of the other class to exercise the same prerogative over property which they may own. What is denied one class may be denied the other. There is, therefore, no discrimination within the civil rights clauses of the Constitution. Such a covenant is enforceable, not only against a member of the excluded race, but between the parties to the agreement."

Treating this as a covenant in the deed—a valid existing contract—all discussion as to conditions subsequent disappear.

■ It is contended, however, that, with the dissolution of the Groves Park Company, no one succeeded to its rights under the terms of the restriction here involved; that, upon the dissolution of a corporation, the legal title to its property passes by operation of law to the stockholders, and a stockholder's right is not an individual share in the assets of the corporation, but merely a right to participate in the proceeds derived from the sale of the property in winding up its corporate affairs. It is therefore urged that the right of a successor of a defunct corporation to acquire a possibility of reverter, such as is here involved, is limited to corporate successors to the franchises, rights, and powers of the dissolved corporation as well as to its property and business, and, as there is no such successor to the Grove Park Company, the right of reverter under the restriction ceased to exist.

We are not impressed with this contention. Edwards acquired title to all the property of the corporation by deed, prior to its dissolution. When the Grove Park Company was dissolved, it possessed no property; there was nothing left to be sold, hence no proceeds to be distributed among the stockholders. Edwards became the successor in title and assignee of the Grove Park Company to all the property which the company had, and as such acquired all the reversionary rights which would have accrued to the company had it remained in existence.

We are here dealing with a covenant attached to the title to real estate, and the word "successor" is used to designate a corporation or persons who may in any lawful manner acquire the proprietorship of the corporate rights and property through which they are exercised. The word "successor" was defined in Amer. Surety Co. v. McDermott, 5 Misc. Rep. 298, 25 N. Y. S. 467, 468, as follows: "The word 'successor' is an apt and appropriate term to designate one to whom property descends * * * and in association with the words 'heirs,' 'administrators,' and 'assigns' plainly imports a devolution of charge upon the obligor's estate." We think, therefore, that the word "successor," as used in the restriction in the deed in the case at bar, was not intended to apply merely to a corporate successor acquiring the rights of the Grove Park Company, but to any grantee of the title of the Grove Park Company to its property as a whole or to the subdivided lots or parcels of the property. The word "successor" is not here used in a restrictive sense, but in connection with the broader term "assigns," which embraces the full power and authority of a corporation to dispose of and convey title to its property, together with any limitations or restrictions thereto annexed.

The decree is reversed, with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.