## KENEALY et al. v. CHEVY CHASE LAND CO. OF MONTGOMERY COUNTY, Md., et al.

### No. 6114.

United States Court of Appeals for the District of Columbia.

Argued May 16, 1934.

Decided June 18, 1934.

William C. Sullivan, of Washington, D. C., for appellants.

Walter C. Clephane, J. Wilmer Latimer, and Gilbert L. Hall, all of Washington, D. C., for appellees Walker and May A. Husted.

George E. Hamilton, John J. Hamilton, George E. Hamilton, Jr., and Henry R. Gower, all of Washington, D. C., for appellee Chevy Chase Land Company of Montgomery County, Md.

Sydney R. Prince, Jr., of Washington, D. C., for interveners Dunlop and Smith.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree dismissing a bill seeking relief from an injunction and from restrictive deed covenants.

Prior to 1908 appellee, the Chevy Chase Land Company, acquired and subdivided land in the vicinity of what is now Chevy Chase Circle. It owned the land on both sides of Connecticut avenue as far south as what is now Northampton street, but which was not then cut through. It advertised extensively that "reasonable restrictions govern building operations in beautiful Chevy Chase," and that "it is by reason of these restrictions that Chevy Chase is and always will be the ideal suburban home section of Washington." Prospective purchasers were invited to "read these restrictions and you will realize how reasonable they really are. In Chevy Chase, D.C.—1. No apartment houses to be erected. * * 3. Property shall not be used for manufacturing or mercantile purposes. " ' " In reliance upon these representations, Dr. Thomas A. Poole and wife purchased lot 37, block 1865, opposite parcel 38 over 3, which parcel is on the west side of Connecticut avenue. All contracts for the sale of the company's lots in the subdivision contained these restrictions. Finally, when the land unsold consisted of parcel 38 over 3, the company began the erection of a store building on the southern portion of that parcel. Thereupon the Pooles filed a bill to enjoin the completion of the work. The trial court sustained the bill, and the decree was affirmed in this court. See Chevy Chase Land Co. v. Poole, 48 App. D. C. 400. The plat appearing in our opinion in that case (48 App. D. C. at page 401) will be helpful in understanding the present situation.

In its opinion in the Poole Case, the court said: "The plats, signs, advertisements, and contracts, to say nothing of the admissions, leave no room for doubt that purchasers of this Chevy Chase, District of Columbia, property had a right to understand, and did understand, that parcel 38 over 3 was included in the general scheme for the development and sale of property of the Land Company in that locality. In such circumstances, equity will intervene. The purchaser, having submitted to a burden upon his own land with the understanding that a similar burden is to be placed upon the remaining land of the grantor for the common benefit of all, will be relieved from an attempt by the grantor or third party with notice to depart from the general scheme." See, also, Castleman v. Avignone, 56 App. D. C. 253, 12 F.(2d) 326.

The purchase by each of the individual appellees (and interveners Dunlop and Smith) of lots in this subdivision was made in reliance upon the representation that the general scheme or plan was being and would continue to be observed.

In July, 1926, the land company sold to Oscar H. Robey a portion of parcel 38 over 3 immediately north of Northampton street extended, and fronting on Connecticut avenue. (He has suffered a default decree to be entered against him in this proceeding.) Four months later the land company conveyed to appellants the balance of the Connecticut avenue frontage of parcel 38 over 3; the part immediately adjoining the Robey tract being conveyed to the Byrnes, and the northern portion thereof fronting both on Connecticut avenue and Chevy Chase Circle being conveyed to the Kenealys. The deed to each of these parties contained restrictive covenants in harmony with the general scheme, and provided that no trade, business, or manufacture should be carried on or permitted on the premises, and that no apartment house should be erected thereon. That there might be no misunderstanding, a paragraph was inserted in the deeds as follows: "In evidence of their intention to be bound by the foregoing covenants and agreements the said parties of the second part [the grantees] have hereunto set their hands and seals"—which they did.

It is a matter of common knowledge that Chevy Chase Circle is one of the most attractive residential sections of the National Capital. That this has been due to the general scheme under which the section has been developed and to which we have already alluded, there can be no doubt. Appellants when they acquired land in this section not only knew of this general scheme under which no business would be allowed and no apartment houses erected, but by setting "their hands and seals" to the deeds acknowledged the existence of the scheme and "their intention to be bound" thereby. Only a few years have elapsed, and yet it is contended that conditions have so changed as to make inequitable the enforcement of the restrictive covenants. The purchasers of lots in this subdivision had a right to assume that their quiet and enjoyment should not be disturbed. The restrictions to that end were reasonable and were approved in the Poole Case. It is contended that the volume of vehicular traffic at Chevy Chase Circle is much greater than formerly. The evidence as to the increase is not clear, but assuming that there has been a substantial increase in such traf-

fic, the concession is of little significance, for we may rightfully say that owing to the growth of the city there has been a similar increase in all sections. The fact remains that the use of property for business and apartment house purposes is stopped at Northampton street. To extend these uses to the Circle would greatly change the character of the subdivision.

In Coudert v. Sayre, 46 N. J. Eq. 386, 19 A. 190, 191, where the complainant brought a suit in chancery seeking relief from the binding obligations of a restrictive covenant on the ground that conditions had changed, the court said: "The case which the complainant lays before the court as the foundation for the relief he seeks is one of extreme novelty. Stated generally, it must be said that the complainant is before the court asking to be relieved, as against the defendant, from the obligation of a covenant which he made voluntarily, fully understanding what he was doing, entirely uninfluenced by fraud, and without the least mixture of accident or mistake."

In Smith v. Lynch, 233 Mich. 6, 206 N. W. 362, 363, which involved restrictive covenants similar to those in the present case, the court said: "This subdivision was restricted for a purpose, and that purpose was to make it a residence district where the owners of homes could live quietly, away from the noise and bustle of business. * * * If these restrictions must give way because there is more or less business around the subdivision, then all that will be necessary in the future to destroy any subdivision will be for speculators and others interested to surround it with business places, and all restrictions will be discarded. We cannot agree with this construction of the contract." See, also, Humphreys v. Ibach, 110 N. J. Eq. 647, 160 A. 531, 85 A. L. R. 980; Cuneo v. Chicago Title & Trust Co., 337 Ill. 589, 169 N. E. 760; Pagenstecher v. Carlson, 146 App. Div. 738, 131 N. Y. S. 413.

Evidence was offered by appellants that the removal of the restrictions would enhance fivefold the value of their holdings in 38 over 3. As the court observed in Smith v. Lynch, 233 Mich. 6, 206 N. W. 362, 363, if the restrictions must give way for such a reason, "then all that will be necessary in the future to destroy any subdivision will be for speculators and others interested to surround it with business places." It is apparent that the enhancement in value of appellants' holdings would be at the expense of all those who bought their homes in reliance upon the general plan or scheme. Bohm v. Silberstein, 220 Mich. 278, 189 N. W. 899; Reeves v. Comfort, 172 Ga. 331, 157 S. E. 629; Cuneo v. Chicago Title & Trust Co., 337 Ill. 589, 169 N. E. 760.

Finally, appellants contend that even though the restriction as to business use be continued, they should be relieved of the restriction concerning apartment houses. We do not think so. In Cuneo v. Chicago Title & Trust Co., 337 Ill. 589, 169 N. E. 760, 764, the court said: "Equity could not do justice to all the parties to this lawsuit by removing these restrictions on the property of appellants. The defendant Peter Reisenhaus, who owns the lot next to appellant Cuneo and who has a valuable home thereon, would find his property much damaged if the lot next to it on the west was devoted to commercial *or apartment purposes.* And so with others. Equity will remove such restrictions only when to do so will not unjustly injure other property. That situation does not exist here." (Italics ours.) The erection and use of an apartment house, many stories high, would not only constitute an actual violation of an express covenant against the erection of apartment houses, but could not help being otherwise objectionable. A building of that kind would cast a metaphorical as well as an actual shadow. The building would be occupied by a large number of tenants, who would maintain a large number of automobiles, coming and going at all hours of the day and night; an increase in the number of automobiles of tradesmen and moving vans supplying the needs of the tenants would follow, with the inevitable noise accompanying them, and all would be concentrated in the neighborhood of the apartment house and could not do other than disturb the peace, quiet, and enjoyment of the owners of surrounding residential property. In short, to erect an apartment house on appellants' property would change the character of the subdivision from a community of permanent, individual small home owners, who in this country form in large measure the warp and woof of the fabric of our citizenship, into a community of an evanescent and more transient character.

We have considered the other assignments of error and find them without merit.

The decree below is right, and is affirmed, with costs.

Affirmed.