**JAMESON. et al. v. BROWN et al.**

No. 7326.

United States Court of Appeals for the District of Columbia.

Decided Dec. 29, 1939.

Rehearing Denied Feb. 17, 1940.

Alfred M. Schwartz, Joseph T. Sherier, Laura M. Berrien, and Martin F. O'Donoghue, all of Washington, D. C., for appellants.

James C. Wilkes and James E. Artis, both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This case involves the enforcement of a covenant against the sale of liquor in Columbia Heights, i. e., the part of Washington bounded by the north side of Florida Avenue, the east side of 14th Street, the south side of Park Road, and (in general) the west side of 11th Street, N.W.

Between 1881 and 1889 the owner of the tract conveyed it in lots to various persons. Each deed, with a possible exception not material here, contained approximately this language: "And the parties of the second part, by accepting this deed, covenant and agree to and with the party of the first part that when a building is erected upon the said lot herein described, it shall not be within thirty feet of the street line, nor shall it be used for manufacturing or mechanical purposes, nor shall spirituous liquors be sold therein." All these deeds were recorded. The covenants have been incorporated in some subsequent conveyances.

In 1889 the tract was largely open country. It later developed into a residence community. It is still used exclusively for residence purposes, except that it now contains a high school and a normal school and except that the west side of 11th Street has become partly commercial and the east side of 14th Street has become largely commercial. The west side of 14th Street, which is outside the tract, is also largely commercial, and both sides are zoned accordingly. On the west side there are several liquor stores. The businesses on the east side, within the tract, include grocery stores, dry goods stores, drug stores, beauty shops, barber shops, Chinese laundries, shoe repair shops, automobile service stations, an undertaking establishment, an upholstery shop, and a window shade shop. On the west side of 11th Street, within the tract, there are grocery stores, a Chinese laundry, and a tailor shop.

Appellees own, and some of them occupy, residences within the tract. Appellants own or occupy buildings within the tract, on 11th Street or 14th Street, in which alcoholic drinks of various sorts are now sold or about to be sold. Appellees have obtained an injunction, suspended pending this appeal, which forbids these sales.

"Where certain restrictions are a part of a general scheme or plan for the benefit and improvement of all the lands included in a certain tract, courts of equity will, under proper circumstances, enforce such restrictions at the suit of any grantee against any other such grantee." But, by exception, " 'Equity will not, as a rule, enforce a restriction, where * * * the property, and that in the vicinage, has so changed in its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant the relief would be a great hardship on the owner and of no benefit to the complainant, or where the complainant has waived or abandoned the restriction, or, in short, it may be said that where, from all of the evidence, it appears that it would be against equity to enforce the restriction by injunction, relief will be denied, and the party seeking its enforcement will be left to whatever remedy he may have at law.' " Castleman v. Avignone, 56 App.D.C. 253, 256, 258, 12 F.2d 326, 329, 331.

This case is within the general rule, and it is not within the exceptions.

It is evident that the liquor covenants are part of a general plan for the benefit of all the land in the tract. That they are beneficial only from certain points of view and in relation to certain purposes is nothing against them; as much may be said of any restrictive covenant. Any covenant benefits those whose purposes it serves and burdens those whose purposes it thwarts. That is why covenants are made: if a given plan were beneficial absolutely, self-interest alone could be relied upon to secure conformity. Covenants, like zoning laws, segregate conflicting purposes and so promote their greater satisfaction. There is room in Washington for those who like and for those who dislike to live near liquor stores.

There is no contention that existing conditions make any land in the tract unfit or unprofitable for use if the restriction is enforced. Most, if not all, of the tract is clearly fit and profitable for residence use. Even on 14th Street there are numerous apartment houses and a few private residences, and they are not alleged to be unfit or unprofitable. The business districts on 11th and 14th Streets, including appellants' premises, are not shown to be unfit or unprofitable for all or for any of the great variety of businesses which the covenants permit. Many such businesses are actually carried on in those districts. It does not appear that the enforcement of the covenant will impose great hardship on the ap-

pellants. Their own real estate expert, Bowie, thought that the sale of liquor along 14th Street would not affect the value of property in the subdivision "to any great degree;" and as we understand his testimony, the only depressing effect which he thought an injunction would have upon the value of appellants' property is a temporary effect incidental to a change of tenants. He stated that no higher rents can be obtained from liquor stores than from other stores. There was contrary testimony, but the court was under no obligation to credit it. Moreover, in Kenealy v. Chevy Chase Land Company of Montgomery County, 63 App.D.C. 327, 72 F.2d 378, we upheld a covenant although the value of the burdened land would have been increased fivefold by its violation.

■ It is not shown that the enforcement of the covenant will be of no benefit to the appellees. It may be that the sale of liquor in Columbia Heights does not reduce the market value of their property; but, as we said in the Kenealy case, "The purchasers of lots in this subdivision had a right to assume that their quiet and enjoyment should not be disturbed."[1] Some at least of the appellees bought their property for their own use, in reliance on the covenant. It is unquestioned that "the value of their properties for the purposes which induced their purchase, i. e., their personal use and enjoyment, would be seriously impaired" by breach of the covenant; and this is enough.[2] It pleases them to live at a distance from liquor stores. By buying property in Columbia Heights they bought that privilege. It is no answer to say that they cannot stop the sale of liquor on the west side of 14th Street. A similar argument might be made against the enforcement of almost any restrictive covenant. All restrictions have boundaries, and no restriction gives protection against what goes on across the boundary. Cf. Grady v. Garland, supra. A liquor store across a wide and busy street is not the same thing as a liquor store on one's own side. If liquor may be sold today on the east side of 14th Street because it is sold on the west side, tomorrow it may be sold just east

of the east side because it is sold on the east side, and so on.

■ Nor have appellees waived or abandoned the restriction. We need not consider whether the building-line covenant and the covenant against "manufacturing or mechanical purposes" have been so long and so generally violated as to be unenforceable. The liquor covenant is separable. In 1921, a drug store at 14th and Clifton Streets began selling liquor, on doctors' prescriptions, under the Prohibition Act. One of appellants bought this store in 1926, and continued during the continuance of prohibition to sell liquor on prescription. Signs inside the store announced that "Whiskey prescriptions are filled here under the Prohibition Act." It is not clear that medicinal sales violate the fair meaning of the covenant.[3] Even if such sales violate the covenant, it does not follow that the covenant has been waived. In view of the mild character of the supposed breach, and the fact that it occurred at only one point in a restricted area of many city blocks, there continued to be a substantial compliance with the covenant. In Castleman v. Avignone, 56 App.D.C. 253, 258, 12 F.2d 326, we held that there was substantial compliance with a 7½ foot building-line covenant, and proceeded to enforce it, although many buildings had been set approximately 7 feet from the street. Moreover, it is not shown that appellees knew of the prescription liquor business. It was not advertised, except inside the drug store. Proof that one appellee sometimes entered the drug store does not charge appellees with knowledge that the store sold liquor. And it is not shown that any one has taken any action in reliance upon the prescription liquor business. After repeal, and before they began the sales which are involved in this appeal, appellant dealers applied for and obtained licenses. Appellees promptly gave notice that they would try to enforce the covenant, and within a few weeks brought this suit.[4]

■ We think the trial court was clearly right in holding the covenant enforceable. But we cannot agree with its view

---

[1] 63 App.D.C. 327, 328, 72 F.2d 378, 379.

[2] Grady v. Garland, 67 App.D.C. 73, 75, 89 F.2d 817, 819, certiorari denied 302 U.S. 694, 58 S.Ct. 13, 82 L.Ed. 536.

[3] A decision of the New York Court of Appeals tends to show that they do violate the covenant. Isaacs v. Schmuck, 245 N.Y. 77, 156 N.E. 621, 51 A.L.R. 1459.

[4] In these circumstances, appellant dealers cannot be heard to complain of the expense involved in changing their business or its location.

that the term "spirituous" liquors includes beer and wine. Prevailing usage, reflected in dictionaries and cases, restricts the term to distilled spirits or "hard liquor," to the exclusion of fermented drinks. Century Dictionary; Sarlls v. United States, 152 U.S. 570, 14 S.Ct. 720, 38 L.Ed. 556. If the parties to the covenant wished to prevent the sale of beer and wine, they should have used broader language.

Our conclusion is that the decree of the trial court should be modified so as to conform to this opinion, and it is so ordered.