**HUNDLEY et ux. v. GOREWITZ et al.**
**No. 8154.**

United States Court of Appeals for the District of Columbia.

Argued Nov. 16, 1942.

Decided Dec. 14, 1942.

Mr. Charles H. Houston, of Washington, D. C., for appellants.

Messrs. Henry Gilligan and James A. Crooks, both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and VINSON, and RUTLEDGE, Associate Justices.

GRONER, C. J.

In September, 1910, Harry B. Willson and Harry Wardman were the owners of six contiguous lots located on the west side of Thirteenth Street, Northwest, between Clifton and Euclid Streets, in the District of Columbia. They erected thereon a block of six residences, which are now numbered respectively 2524, 2526, 2528, 2530, 2532 and 2534 Thirteenth Street. The houses were sold to different purchasers and in each of the deeds of conveyance, with the exception of that for house now numbered 2526, the following restrictive covenant appears: "Subject also to the covenants that said lot shall never be rented, leased, sold, transferred or conveyed unto any Negro or colored person under a penalty of Two Thousand Dollars ($2,000) which shall be a lien against said property."

The case turns upon the effect to be given this covenant.

Appellants, Frederick F. Hundley and Mary G. Hundley, his wife, are Negroes, who since January 17, 1941, have owned and occupied house No. 2530. Appellee Gorewitz owns and occupies No. 2528 and appellee Bogikes and his wife own and occupy No. 2534. All three properties are restricted against Negro ownership or occupation. Appellees brought this suit against appellants in the District Court for violation of the covenant. There was a trial without a jury, and on December 1,

1941, the court permanently enjoined appellants from ever "owning, occupying, selling, leasing, transferring or conveying" the property in question, and cancelled their deed.

In this court appellants insist that the covenant constitutes an undue and unlawful restraint on alienation. But in view of the consistent adjudications in similar cases, it must now be conceded that the settled law in this jurisdiction is · that such covenants as this are valid and enforceable in equity by way of injunction. Corrigan v. Buckley, 55 App.D.C. 30, 299 F. 899; Torrey et al. v. Wolfes et al., 56 App.D.C. 4, 6 F.2d 702; Castleman v. Avignone et al., 56 App.D.C. 253, 12 F.2d 326; Russell et al. v. Wallace, 58 App.D.C. 357, 30 F.2d 981; Cornish v. O'Donoghue, 58 App.D.C. 359, 30 F.2d 983; Grady v. Garland, 67 App.D.C. 73, 89 F.2d 817. Nor is relief by way of injunction foreclosed by the penalty provision contained in the covenant. Torrey v. Wolfes, supra; Edwards v. West Woodridge Theater Co., 60 App.D.C. 362, 55 F.2d 524. However, it is equally well settled that, since the purpose of such restrictions is the mutual benefit of the burdened properties, when it is shown that the neighborhood in question has so changed in its character and environment and in the uses to which the property therein may be put that the purpose of the covenant cannot be carried out, or that its enforcement would substantially lessen the value of the property, or, in short, that injunctive relief would not give a benefit but rather impose a hardship, the rule will not be enforced.

This exception to the rule is applicable in the case of a covenant such as we have here when, in the natural growth of a city, property originally constructed for residential purposes is abandoned for homes of more modern construction in more desirable locations, for a serious decline in values would follow unless the way was open either for use of the property for business purposes or for the housing needs of a lower income class. And it is also applicable where removals are caused by constant penetration into white neighborhoods of colored persons. For in such cases to enforce the restriction would be to create an unnatural barrier to civic development and thereby to establish a virtually uninhabitable section of the city. Whenever,·therefore, it is shown that the purpose of the restriction has been frustrated and that the result of enforcing it is to depreciate rather than to enhance the value of the property concerned, a court of equity ought not to interfere.

The inquiry then is whether the circumstances of this case require the application of these exceptions to the rule. First of all, we have here a restrictive covenant made more than thirty years ago, under residential conditions wholly different from those obtaining today. On both sides of Thirteenth Street in the block we are concerned with there is a total of sixteen houses and three apartments. None of these, save five of the six houses we have referred to, is burdened with a restrictive covenant against Negroes. When, some fifteen years ago, it was attempted to extend the restriction by means of an agreement among all of the owners of property in the block, the attempt failed. At the time this suit was brought the one unrestricted house of the row of six built in 1910, No. 2526, which immediately adjoins appellee Gorewitz's house, was owned and occupied by Negroes. While the suit was pending one of the houses on the east side of Thirteenth Street, almost directly opposite appellees' properties, was purchased by a Negro. A glance at the neighborhood shows the definite trend, both north and south on Thirteenth Street, of Negro ownership and occupation. On Thirteenth Street, from Logan Circle north to Florida Avenue, only one block away, some half dozen or more city blocks are predominantly Negro. One block north of the property all the houses facing Fairmont Street, from Eleventh to Thirteenth, are occupied by Negroes, and from that point north for seven blocks the intersecting streets are almost solidly Negro and on the east side of Thirteenth Street Negro occupancy predominates, while on the west side of Thirteenth Street, north from Euclid, there are a number of houses occupied by Negroes.

The evidence satisfies us that the effect of all this is to make the market value of property on Thirteenth Street, in this particular block and nearby, greater for colored occupancy than for white. There is also evidence to the effect that the local citizens association, upon learning that appellants' vendor contemplated selling to appellants or other Negroes, tried to procure a white purchaser, and that one of appellees himself had purchased the house numbered 2534.

from Home Owners Loan Corporation for $2,000 less than that Corporation was offered by a colored bishop.

Furthermore, apart from the market value of the property, which, as we have seen, is not the only test, the present appellees are not now enjoying the advantages which the covenant sought to confer. The obvious purpose was to keep the neighborhood white. But the strict enforcement of all five covenants will not alter the fact that the purpose has been essentially defeated by the presence of a Negro family now living in an unrestricted house in the midst of the restricted group, and as well by the ownership by another Negro of a house almost directly across the street. And this is just the beginning.

The trend is unmistakable, its effect is apparent, and we are brought to conclude that to grant an injunction enforcing the covenant would merely depreciate all the property in the block without accomplishing the purpose which originally impelled its making, while to deny an injunction will leave all of the properties with a value commensurate to the conditions as they now exist. In these circumstances the equities require that we refuse injunctive relief and leave the parties to such remedies as they may have at law. Osius v. Barton, 109 Fla. 556, 147 So. 862, 88 A.L.R. 394; McClure v. Leaycraft, 183 N.Y. 36, 75 N.E. 961, 5 Ann.Cas. 45; Clark v. Vaughan, 131 Kan. 438, 292 P. 783; Pickel v. McCawley, 329 Mo. 166, 44 S.W.2d 857.

We have carefully reviewed Castleman v. Avignone, 56 App.D.C. 253, 12 F.2d 326; Cornish v. O'Donoghue, 58 App.D.C. 359, 30 F.2d 983; Kenealy v. Chevy Chase L. Co., 63 App.D.C. 327, 72 F.2d 378; Grady v. Garland, 67 App.D.C. 73, 89 F.2d 817, and Jameson v. Brown, 71 App.D.C. 254, 109 F.2d 830, in which covenants were upheld, and are of opinion that while they are apposite, they are distinguishable.

Reversed and remanded for a new trial in accordance with this opinion.

RUTLEDGE, Justice.

I concur in the result for the reason that if such a covenant as is involved in this case is valid in any circumstances, as to which I express no opinion, it is not valid or enforceable in the conditions shown on the present record and stated in the opinion of the court.