HAROLD F. KEMP et al., On Behalf of Themselves and All Others Equally Interested, Plaintiffs, v. SOPHIE RUBIN et al., Defendants.

Supreme Court, Special Term, Queens County, February 11, 1947.

*Frederick W. Newton* and *William F. Campbell, Jr.,* for plaintiffs.

*Paul R. Silverstein* and *Irving L. Schuh* for Sophie Rubin, defendant.

*Andrew D. Weinberger* and *Vertner W. Tandy, Jr.,* for Samuel Richardson, defendant.

*Leo Pfeffer, Lawrence W. Kaufman* and *Will Maslow* for American Jewish Congress, *amicus curiæ.*

*Will Maslow* and *Leo Pfeffer* for American Civil Liberties Union, *amicus curiæ.*

*Marion Wynn Perry* for National Lawyers Guild, *amicus curiæ.*

*Mortimer B. Wolf* for New York State Industrial Union Council, C.I.O., and another, *amici curiæ.*

*Charles Abrams* for City Wide Citizens Committee on Harlem, *amicus curiæ.*

*William Kincaid Newman* for Social Action Committee of the New York City Congregational Church Association, Inc., *amicus curiæ.*

*Robert L. Carter* for Methodist Federation for Social Service, *amicus curiæ.*

LIVINGSTON, J. In 1939 eighteen owners of real property on 177th Street between 112th and 114th Avenue, in the Addisleigh section of St. Albans, Queens County, executed a restrictive covenant reciting " that no part of the land now owned by the parties hereto * * * shall ever be used or occupied, or sold, conveyed, leased, rented or given, to Negroes or any person or persons of the Negro race or blood or descent ". The agreement also provides that the covenant is to run with the land and is to bind the parties, their heirs, successors and assigns until December 31, 1975. Plaintiffs, who are two of the signers of the agreement, sue to enjoin a third, the defendant Sophie Rubin, from conveying her property to a Negro, the defendant Samuel Richardson, and to enjoin the latter from purchasing or occupying such property. The answers admit that defendants entered into a contract of sale and that the defendant Richardson is of the Negro race. In addition to denying that plaintiffs will

sustain irreparable and great pecuniary loss if the proposed conveyance is consummated, defendants plead ten affirmative defenses.

Prefatory to a consideration of the issues presented, the court wishes to express its deep gratitude to counsel for plaintiffs, defendants and the various organizations which have intervened in this action as *amici curiæ*, for their able and enlightening arguments and for their very scholarly briefs. Also by way of prelude, the court wishes to state that it is in accord with the views expressed by Mr. Justice MURPHY in *Hirabayashi* v. *United States* (320 U. S. 81) to the effect that (pp. 110–111): " Distinctions based on color and ancestry are utterly inconsistent with our traditions and ideals. They are at variance with the principles for which we are now waging war. We cannot close our eyes to the fact that for centuries the Old World has been torn by racial and religious conflicts and has suffered the worst kind of anguish because of inequality of treatment for different groups. There was one law for one and a different law for another. Nothing is written more firmly into our law than the compact of the Plymouth voyagers to have just and equal laws."

At the same time, however, and regardless of what its sentiments may be, this court is constrained to follow precedent and govern itself in accordance with what it considers to be the prevailing law.

Defendants' main contentions are that judicial enforcement of the racial restrictive agreement involved is ·prohibited by the Fourteenth Amendment of the Constitution of the United States and that the same is contrary to the public policy of the State of New York and of the United States. Similar restrictive covenants, however, have consistently been held to be valid and enforcible in equity by way of injunction by both the Supreme Court of the United States and our State and Federal courts. The first holding by the Supreme Court of the United States to this effect was *Corrigan* v. *Buckley* (271 U. S. 323). There the court affirmed a decree enjoining the defendant Corrigan from selling a lot in Washington, D. C., to the defendant Curtis in violation of an indenture entered into by Buckley, Corrigan and another, whereby they mutually covenanted and bound themselves, their heirs and assigns for twenty-one years, not to sell to any person of the Negro race or blood. Significantly, in the *Corrigan* case (*supra*), it was also urged that so long as it was beyond legislative power to

enact a statutory restriction similar to the covenant involved there (*Buchanan* v. *Warley,* 245 U. S. 60), it was inconceivable that a court of equity would judicially compel observance of such a covenant. The Supreme Court brushed aside this contention and specifically stated that the prohibition of the Fourteenth Amendment had reference to State action exclusively and not to any action by private individuals. The court stated, at page 330: '' And the prohibitions of the Fourteenth Amendment ' have reference to state action exclusively, and not to any action of private individuals.' *Virginia* v. *Rives,* 100 U. S. 313, 318; *United States* v. *Harris,* 106 U. S. 629, 639. ' It is State action of a particular character that is prohibited. Individual invasion of individual rights is not the subject-matter of the Amendment.' *Civil Rights Cases,* 109 U. S. 3, 11. It is obvious that none of these Amendments prohibited private individuals from entering into contracts respecting the control and disposition of their own property; and there is no color whatever for the contention that they rendered the indenture void.''

In the intervening twenty years subsequent to the decision in *Corrigan* v. *Buckley* (*supra*), the same question has arisen in a considerable number of cases and the same conclusion has been reached by the courts. (See *Russell* v. *Wallace,* 30 F. 2d 981, certiorari denied 279 U. S. 871; *Cornish* v. *O'Donoghue,* 30 F. 2d 983, certiorari denied 279 U. S. 871; *Grady* v. *Garland,* 89 F. 2d 817, certiorari denied 302 U. S. 694; *Mays* v. *Burgess,* 147 F. 2d 869, certiorari denied 325 U. S. 868; *Ridgway* v. *Cockburn,* 163 Misc. 511; *Dury* v. *Neely,* N. Y. L. J., April 28, 1942, p. 1796, col. 1.)

Counsel for the defendants also urge that section 11 of article I of the Constitution of the State of New York now prohibits the use of such covenants. Section 11 reads: '' No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.'' In seeking the answer to this question, we must examine the origin and background of the new provision of the Constitution to determine the intention of its framers. Except for the first sentence which embodies in part the Fourteenth Amendment of the Federal Constitution, section 11 is the compromised result of ten separate and original proposals (Revised Record of the New York State Constitutional Conven-

tion, 1938, Vol. 2, p. 810) differing in length and scope, with varying degrees of particularity. The proposal which was finally passed is general in form and does not include any language which specifically condemns restrictive covenants. This omission seems significant when considered in the light of the discussion which attended the passing of the amendment. In the debates which preceded the adoption of the amendment (Revised Record of the New York State Constitutional Convention, 1938, Vol. 4, pp. 2626–2627), it was stated that the civil rights concerning which the amendment was designed to afford protection were only those " which appertain to a person by virtue of his citizenship in a state or a community ", and " which are found in the Constitution, in the Civil Rights Law and in the statutes." In other words, no new civil rights were intended to be created by the constitutional amendment and it was merely permissive in character. This interpretation is reinforced by the statement of the Bill of Rights Committee (Revised Record of the New York State Constitutional Convention, 1938, Vol. 2, p. 1144) which reads: " * * * it is implicit in the Constitution that any * * * enactment such as this, in order to be effective, must be carried out in some form by legislative enactment * * *." It is significant to note that several such statutory enactments prohibiting restrictive covenants were introduced in the Legislature subsequent to the Constitutional Convention, but were not adopted.

In fact, a bill has been introduced at the present session of the Legislature (Assem. Pr. No. 71) to amend the Civil Rights Law as follows: " § 46. Purchase and lease of real property. The opportunity to purchase and to lease real property without discrimination because of race, creed, color or national origin is hereby recognized as and declared to be a civil right."*

It seems clear, therefore, that we do not have on our statute books any specific provision which outlaws racial restrictive covenants. In the circumstances, this court does not feel that it should judicially legislate by reading into the statute something which the Legislature itself has failed to adopt. What was said by the Court of Appeals in the *Matter of O'Brien* v. *Tremaine* (285 N. Y. 233, 238) is particularly pertinent: " The policy which dictated the enactment of a statute which both defines and limits the rights which the appellant now asserts, is a matter solely for the Legislature. No power is granted to the courts by interpretation to vary the clear and positive

* Not passed by 1947 Legislature.— [REP.

mandate of the statute. Mindful of our duty to construe that statute liberally, we must not be unmindful of the rule that ' freedom to construe is not freedom to amend.' "

Defendants' further contention that the covenant in the present case constitutes an undue and unlawful restraint upon alienation is also untenable. The true test to determine whether a restrictive covenant is void as a restraint upon alienation is whether it restrains all alienation. (*Potter* v. *Couch*, 141 U. S. 296, 315.) Applying that rule to the facts here, we find that the defendant owner has been free at all times to sell her property to all persons except to those of a particular race, for a limited period of time. Such a covenant has been held not to be an unlawful restraint upon alienation. (*Hundley* v. *Gorewitz*, 132 F. 2d 23; *Cornish* v. *O'Donoghue*, 30 F. 2d 983, *supra; Corrigan* v. *Buckley*, 271 U. S. 323, *supra.*)

Defendants also stress the defenses that there was a conditional delivery of the covenant by the defendant Rubin, that plaintiffs have been guilty of laches and have waived the benefits of the restrictive covenant; also, that the character of the neighborhood has changed to such an extent that to grant injunctive relief would impose a great hardship upon them. These defenses have not been substantiated by the evidence adduced at the trial.

The evidence shows that plaintiffs have not violated the covenant themselves nor have they consented to or authorized its violation by others. Even if there were violations, plaintiffs could disregard those that were not in close proximity to them and could proceed against the ones which were particularly offensive. Under the circumstances there was no waiver or laches on their part. (*Rowland* v. *Miller*, 139 N. Y. 93.)

The proof also discloses that the present covenant was executed by the plaintiffs and the defendant Rubin but seven years ago, and there are only two houses in the area restricted by the covenant which are occupied by Negroes: one which was not covered by the restriction and the other by a white woman who is married to a Negro. It thus appears that the character of the neighborhood has not changed to any great extent. Moreover, the covenant was executed to protect the restricted property and not the property surrounding it (*Grady* v. *Garland*. 89 F. 2d 817, *supra*).

Defendants' remaining contention that enforcement of the covenant is forbidden by existing treaties to which the United States is a signatory is without force. These treaties have

nothing to do with domestic matters nor with agreements between citizens of the United States. In fact, section 7 of article 2 of the United Nations Charter expressly so provides.

Judgment is, therefore, granted to plaintiffs for the relief demanded in the complaint. Submit judgment accordingly on notice.