McKINNEY et al. v. BURMAN PROP-
ERTIES, Inc. et al.

Civ. No. 4397–47.

United States District Court
District of Columbia.

Feb. 28, 1948.

Curtis P. Mitchell and Hubert B. Pair,
both of Washington, D. C., for plaintiffs.

Wilkes, McGarraghy & Artis, of Wash-
ington, D. C., for defendants.

PROCTOR, Associate Justice.

Plaintiffs seek to enjoin defendants from
continuing construction of a building on
a plot of land at the northwest corner of
11th and Lamont Streets, Northwest, in
disregard of a building restriction line,
and to require removal of the construction
already done.

The land was originally parts of lots 4
and 5 in block 20, now Square 2842, in
a subdivision called Columbia Heights,
which was bounded south by Florida Ave-
nue, north by Park Road, west by 14th
Street and east by other tracts. Later

11th Street was extended by the District of Columbia north from Florida Avenue, absorbing parts of lots 4 and 5. They had been interior lots. The remaining portions taken together, now in one ownership, became a corner plot, bounded on the east by 11th Street, and on the south by Lamont Street.

In 1881 the subdivision owner impressed all the lots lying north of Clifton Street with a restriction against building within thirty feet of the front line of the lots. Lots 4 and 5 had one frontage; that was on Lamont Street. Therefore the building line applied to that street. This covenant and others as to improvements and use, clearly patterned the section for residential purposes. It quickly developed in that way and soon became a large residential section of the city.

· Gradually the dwellings along 14th Street gave way to business uses. This brought about extensions of buildings to the street line of 14th Street in disregard of the 30 foot restriction which had prevailed as to the original improvements. To a lesser degree business has encroached along 11th Street. But, parts of this street do not lie within the subdivision, and the covenant did not apply to the frontage along the street. Both 14th and 11th Streets have become important thoroughfares, which doubtless accounts for business attaching itself to those highways as the needs of the section called for neighborhood stores.

The interior streets, including Lamont, have continued to be entirely residential, improved by dwellings of good quality, which with few exceptions set well back from the street, adhering generally to the 30 foot line except as to bays and porches. In the conversion of 11th and 14th Streets to business uses the buildings thereon have been erected or extended out to the street line, yet in most instances on the corner lots the buildings on the intersecting residential streets have been kept back to the line of dwellings fronting thereon. This is illustrated by the store buildings at the southwest and northeast corners of 11th and Lamont Streets. These stores front on 11th Street and have been kept back to the line of the main wall of the adjoining residences on Lamont Street, with the evident intention of complying with the building line here in question. These buildings are directly across from defendants' property, and fairly illustrate what plaintiffs are asking in connection with the building defendants are constructing. (See Defts'. 1F, 11, 12.)

The evidence does show that the main walls of a few buildings on residential streets other than Lamont are less than thirty feet from the street line. It also appears that dwellings on Columbia Road between 11th and 13th (running east and west) are much closer to the street line than thirty feet. However, that street was laid out by the District of Columbia after the subdivision was made and the original building line did not apply to it.

As to Lamont Street between 11th and 13th, it appears that bay windows and open porches of many dwellings, including those of plaintiffs, extend beyond the line. On the north side, upon which defendants' property is located, these projections extend varying distances from $3\frac{1}{2}$ feet to 6 feet. On the opposite side the bays extend from $3\frac{1}{2}$ feet to 4 feet and in some instances open porches and steps range from 8 feet to 14 feet beyond the line. The buildings fronting on this street are all residential in their design and are used only as dwellings. The street presents an attractive setting of homes for people in moderate circumstances. It does seem clear that unless there be some controlling reason to the contrary these home owners should be protected against damaging encroachments such as is now being attempted by the defendants. The evidence as to projections on Lamont Street was not presented at the preliminary hearing. There was no suggestion then that defendants were in any wise influenced in their course of action by reason of bays or porches extending beyond the line, or that they regarded such extensions as violations of the covenant. This comment is not intended as any criticism, but only as indicating that defendants were not influenced thereby to disregard the covenant.

The defendant corporation is the title owner of the corner plot in question, now

designated as lots 809 and 810 in Square 2842. Defendant Burman is president and in active charge of building operations for the company. Although well aware of the building restriction line on Lamont Street defendants, in disregard thereof, began construction of a building designed for stores fronting on 11th Street and covering the entire restricted area on Lamont Street. Work began during the first part of September on footings and other ground preparations. Brick work on the west or rear wall began the last week in September. Just how soon the walls took form on the restricted zone of Lamont Street is somewhat uncertain. However, I gather from the evidence that it was about the middle of October, possibly a little earlier, when it came to the attention of the plaintiffs that the structural work above the ground was occupying the restricted area. Then followed a meeting of the plaintiffs and other interested persons, resulting in the employment of an attorney and finally the filing of this suit on October 30th. Photographs in evidence fairly reveal the state of the work at that date. Notwithstanding the suit, including application for a restraining order, the defendants continued with the work, so that at the time of the hearing for a preliminary injunction it had progressed considerably beyond what it was on the date that suit was filed. With this understanding of the salient facts, the contention of the defendants, whereby they seek to justify their admitted disregard of the building line, may be considered.

■ First, it is contended that the covenant has been waived by many violations thereof within the subdivision. Defendants cite the growth of business on 14th and 11th Streets, and the breaking down of building restriction lines thereon. As to 14th Street it is certainly true that the street has gradually changed almost entirely from residential to business uses, resulting in a general disregard of the building line. To some extent business has also encroached along 11th Street. But we are dealing with a building line on Lamont Street, the land in question here. The building line never did apply to 11th Street. That street was not laid out until many years after the covenant was established.

Then too, as has been pointed out, the stores on the two corners at 11th and Lamont Streets have been kept back to the building line of Lamont. As to 14th Street, that is far away. Violations of the restriction line there have had but an indirect and remote influence upon interior property, especially that on Lamont Street, which does not even extend through to 14th Street. Therefore, the fact that these plaintiffs, or others like situated, have not made legal protest at violations of the covenant along 14th Street cannot, in my opinion, be justly construed as a waiver. To do so would be stretching the rule beyond all reason. Schreiber v. Drosness, 100 N.J.Eq. 591, 135 A. 920, 136 A. 515; Bischoff v. Morgan, 236 Mich. 251, 210 N.W. 226; Brigham v. H. G. Mulock Co., 74 N.J. Eq. 287, 70 A. 287.

■ Defendants lay great stress upon the fact that most, if not all the dwellings on Lamont Street between 11th and 13th have bays, porches and/or steps extending beyond the building line into the restricted area, and that the properties of plaintiffs do so. This is urged as a strong evidence of waiver of the covenant by repeated violations in the immediate neighborhood, and that plaintiffs themselves having thus transgressed cannot in equity and good conscience complain of the present violation by defendants. However, it seems to me, after examining cases both ways, that they usually turn upon their own peculiar facts, rather than upon any unyielding rule of law. My conclusion is that each case must depend upon the nature and extent of the departure from the letter of the covenant to determine in a practical, realistic way whether it will result in material detriment to other properties protected by the covenant. Here the encroachments, if they may be so regarded, are confined to bays, open porches and steps. Many cases hold that porches which do not materially interfere with light, air and view are not violations of a building restriction line. Alderson v. Cutting, 163 Cal. 503, 126 P. 157, Ann.Cas. 1914A, 1; Kirkpatrick v. Peshine, 24 N.J. Eq. 206; Tripp v. O'Brien, 57 Ill.App. 407; Barton v. Slifer, 1907, 72 N.J.Eq. 812, 66 A. 899; McGuire v. Caskey, 62 Ohio 419, 57 N.E. 53; Adams v. Howell, 58 Misc.

435, 108 N.Y.S. 945; O'Gallagher v. Lockhart, 263 Ill. 489, 105 N.E. 295, 52 L.R.A., N.S., 1044. Except for projections of that kind the buildings have been constructed along the covenant line. There appear to be no substantial detractions from the objects sought to be attained by the covenant. The neighborhood still retains its attractive residential character. The fact that so many houses have been erected with the main body of the buildings located with reference to the building line and with open porches and bay windows extending over the line indicates a popular interpretation of the restriction to that effect, and if the projections were erected under an erroneous construction of the covenant, that fact is no evidence of an abandonment of the general scheme. Brigham v. H. G. Mulock Co., 74 N.J.Eq. 287, 290, 70 A. 287; Morrow v. Hasselman, 69 N.J.Eq. 612, 617, 61 A. 369; McGuire v. Caskey, 62 Ohio 419, 57 N.E. 53. Here the scheme intended by the covenant has been substantially carried out and prevails today. If the projections mentioned do violate the letter of the regulation, they have doubtless occurred through an interpretation acquiesced in by all concerned. No particular damage has been done to any one. Under these circumstances I can see no good reason in equity to deprive the plaintiffs of protection, now that they are threatened with a grievous breach, far different in character and degree, which will directly and seriously affect the enjoyment of their homes. Morrow v. Hasselman, supra; Dalstan v. Circle Amusement Co., 130 N.J.Eq. 354, 22 A.2d 245. There is a vast difference between bays and open porches projecting varying distances beyond the line and a store building erected over the entire restricted area of thirty feet to the line of the street.

■ The doctrine of waiver pro tanto is also invoked. Claiming that the projections on Lamont Street of porches, etc., do constitute violations of the covenant, the defendants insist that they are entitled to build out into the restricted zone for at least fourteen feet, which the evidence shows is the greatest projection beyond the line. However, I do not think the facts of this case can fairly justify the application of that doctrine, even if bays and porches do constitute violations, which I doubt. No comparison can be drawn with such extensions and a store building jutting 14 feet over the line. One does no real damage; the other would inflict serious damage. The defendants would gain much; the plaintiffs would gain nothing and lose much.

■ Next, it is argued that conditions have so changed as to render it inequitable to enforce the covenant. This is quite kindred to the first contention, and the reasons given in disposing of the first point can be applied with equal force in rejecting the second. The objects intended by the covenant still prevail on Lamont between 11th and 13th. No change has taken place there to materially impair the object and intent of the covenant. Jameson v. Brown, 71 App.D.C. 254, 109 F.2d 830; Castleman v. Avignone, 56 App.D.C. 253, 12 F.2d 326. Columbia Heights is far too large an area to treat as one neighborhood in dealing with these questions.

■ It is also contended that to enforce the covenant would impose a great hardship on the defendants without any benefit to the plaintiffs—in other words, that it will not be detrimental to them. In my opinion this argument cannot be supported by the facts. The evidence convinces me that there would be a substantial injury. The building from the viewpoint of the plaintiffs on Lamont Street will be an eyesore. Light and air will be reduced. The street will in some measure lose its present attractive appearance and its residential character. All this, I think, will clearly appear from a study of the photographs in evidence—possibly better by an inspection of the locale. Beyond all those disadvantages, probably the worst is that this breach, if allowed to stand, will become an opening wedge for further violations. If the line can be broken at the corner, it can, with equal justification, be broken at other points along the street. Can it be doubted that to extend a dwelling on Lamont Street between 11th and 13th out to the street line would be a serious damage to other dwellings in that block?

Another contention is that plaintiffs failed to act with due diligence, and therefore are estopped from complaining. However, I think the evidence shows reasonably prompt action on their part. It is not to be expected that they would stand on guard against possible violations of the building line. When their attention was finally attracted to preparation on the ground, in laying of footings, etc., this was hardly sufficient to indicate the erection of a building on the prohibited area. I gather from the evidence that their attention was not attracted to the building of the walls or piers within the 30 foot zone until about the middle of October. It necessarily took time to call a meeting of neighbors and agree upon the course of action which resulted in the employment of an attorney and the filing of this suit. Certainly there was no intentional acquiescence, and having in mind the many incidental details leading to the suit, it cannot be said there was any laxity by the plaintiffs. Group action necessarily takes more time than individual action. In a case of this sort it is unreasonable to look for separate action by aggrieved persons. The trouble and expense is usually too great for a single home owner to assume. Moreover, it must be borne in mind that the defendants, although well aware of the covenant, deliberately designed to ignore it. Accordingly, they began the work without giving interested property owners any prior notice of their intentions. With that determination, it seems manifest that only an injunction would halt them, for after the suit was filed they continued the work unabated until some time later when the motion for a preliminary injunction was heard and decided.

In my opinion the plaintiffs are entitled to a judgment enjoining further construction within the prohibited zone and requiring removal of so much of the structure as now stands back to the front wall of the adjoining building, which it is conceded is on the 30 foot restriction line. I request counsel for plaintiffs to prepare appropriate findings, conclusions and judgment in conformity with this opinion and present them for signing without delay.